Felice GOLINO

v.

The CURTIS PUBLISHING COMPANY.

Civ. A. No. 3156.

United States District Court
E. D. Louisiana,
Baton Rouge Division.

Dec. 16, 1965.

Russell T. Tritico, Tritico, Tritico & Hanks, Lake Charles, La., for plaintiff.

R. Emmett Kerrigan, Deutsch, Kerrigan & Stiles, New Orleans, La., Alfred W. Cortese, Jr., John J. Runzer, Pepper, Hamilton & Scheetz, Philadelphia, Pa., for defendant.

WEST, District Judge:

Plaintiff, Felice Golino, brings this suit against Curtis Publishing Company as publisher of The Saturday Evening Post for damages allegedly resulting from an article appearing in the February 29, 1964 issue thereof. Plaintiff alleges that the article entitled "New Orleans: Cosa Nostra's Wall Street — Crime in America: VI" was libelous, causing him damage for which he seeks recovery. In response to plaintiff's complaint, defendant Curtis filed a motion to quash and to dismiss on the grounds that "mover is a foreign corporation which is not qualified to do, and does not do, business in Louisiana; that plaintiff's alleged claim did not result from any business activity of mover in Louisiana; and that maintenance of jurisdiction of this action would violate the Due Process Clause, the Commerce Clause, and the First Amendment of the United States Constitution." It is this motion which is now before the Court.

In support of its motion, Curtis filed an affidavit executed by its Treasurer, which states under oath the following pertinent facts:

1. Curtis is a Pennsylvania corporation which has not qualified with the Secretary of State for the State of Louisiana to do business in Louisiana; maintains no office, place of business, officers, agents, employees, reporters, solicitors, correspondents or photographers in the State of Louisiana; and has appointed no agent for the service of process in this State.

2. Curtis is not listed in any telephone directory in Louisiana and has no bank account or other assets in this State.

3. The Saturday Evening Post is edited in New York and published by Curtis in Pennsylvania; all subscriptions thereto are sent to and accepted by Curtis in either New York or Pennsylvania.

4. All copies of the magazine destined for subscribers in Louisiana are sent to an independent freight forwarding firm in New Orleans, and by them mailed to subscribers. All copies of the publication sold by newsstands in Louisiana are delivered by Curtis in Pennsylvania to an independent national distributor, which in turn places the magazines on local newsstands for sale to the public.

5. While the company has no regular reporter, correspondents, or photographers who regularly live or work in Louisiana, nevertheless the company does, on occasions, send free-lance and contract writers and photographers into the State. Also, while the company does not have regular advertising solicitors in Louisiana, employees of the company do make occasional advertising trips to this State.

6. The business done by Curtis in Louisiana as compared to its total business, insofar as The Saturday Evening Post only is concerned, is as follows:

(a) Louisiana Newsstand Circulation —5,000–6,000 copies.
Louisiana's Portion of Total Newsstand Circulation—.81 per cent to .95 per cent.

(b) Louisiana's Subscriptions — 54,000 to 55,000.
Louisiana's Portion of Total Subscriptions — .91 per cent to .93 per cent.

(c) Louisiana Newsstand Revenue — $600–$700.

Louisiana's Portion of Total Revenue— .80 per cent to .97 per cent.

(d) Louisiana's Subscription Revenue —$2,000 to $2,200.

Louisiana's Portion of Total Subscription Revenue—.89 per cent to .91 per cent.

(e) Pages of Louisiana Advertising— 1.01 to 2.09.

Louisiana's Portion of Total Pages of Advertising—.06 per cent to .13 per cent.

7. The article presently complained of was written by an independent writer, under contract with Curtis. The writer actually visited New Orleans to gather his information, wrote the article in Connecticut, submitted it to New York, where it was edited and sent to Pennsylvania for printing.

It is on the strength of this affidavit primarily that defendant rests its motion to quash and to dismiss. Defendant was served through the Secretary of State for the State of Louisiana pursuant to the provisions of LSA–R.S. 13:-3471(1), which provides:

"If the foreign corporation is not one required by law to appoint an agent for the service of process, but has engaged in a business activity in this state, service of process in an action or proceeding on a cause of action resulting from such business activity in this state, or for any taxes due or other obligations arising therefrom, may be made on any employee or agent of the corporation of suitable age and discretion found in the state. If such employees or agents are no longer in the state, or cannot be found after diligent effort, the officer charged with the duty of making the service shall make his return to the court, * *. Thereupon the court shall order that service shall be made on the secretary of state, * * *."

Defendant, strenuously denying that it is "doing business" in Louisiana, or that it has engaged in "a business activity" in this State, relies heavily on the case of Buckley v. New York Times Company, 338 F.2d 470 (CA5–1964) wherein the Court said:

"The law is well settled that the mere circulation of a periodical through the mails to subscribers and independent distributors constitutes neither doing business nor engaging in a business activity. Street & Smith Publications v. Spikes (5th Cir.1941), 120 F.2d 895, cert. denied 314 U.S. 653, 62 S.Ct. 102, 86 L.Ed. 2d 524; Insull v. New York World-Telegram Corp. (7th Cir.1959), 273 F.2d 166."

Defendant's reliance on this case postulates the conclusion that it stands for the proposition that mere circulation of a periodical through the mails, no matter how large or small the circulation might be, can never constitute doing business or engaging in business activities within the State. This Court cannot agree with that conclusion. It is true that the facts of that case were, in many respects, similar to those in the present case, except for one striking difference. In the New York Times case, the percentage of the papers circulated, and the advertising attributable to Louisiana for the three years in question, was "less than one thousandth of one per cent, in the aggregate" of the total circulation of that paper. In the present case, as seen by the affidavit filed by defendant, an average of just under one per cent of its total circulation of The Saturday Evening Post is attributable to sales in the State of Louisiana, both with regard to newsstand sales and subscriptions. But defendant urges that this makes no difference because of the fact that the Court in the New York Times case stated unequivocally that mere circulation alone cannot constitute doing business. I cannot agree that the statement of the Court in the New York Times case, when considering the case in its entirety, was that unequivocal. In view of the fact that the Court went into detail to show the minuteness of the circulation of the Times

in the State of Louisiana when compared to its total circulation, and also in view of the cases cited by the Court as authority for its conclusion, it seems quite apparent that the amount of circulation involved *was* a significant factor in the case. For instance, the Court cited the case of Street & Smith Publications v. Spikes, 120 F.2d 895, cert. denied, 314 U.S. 653, 62 S.Ct. 102, 86 L.Ed.2d 524, a case decided in 1941, before International Shoe Company v. State of Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945) and McGee v. International Life Insurance Company, 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223 (1957), when the "presence theory" was apparently still the law. It must be noted that in Street, only slightly over one-half of one per cent of the distributor's total business resulted from handling Street & Smith publications. The Court, in that case, dismissed the suit for lack of jurisdiction because the defendant was not "present" in the State. The decision that they were not "present" there was obviously based upon the fact that the small amount of circulation involved in that state was not sufficient to constitute a "doing business" such as to make the company "present" in the state as was required prior to the International Shoe case and the McGee case.

The Court also cited Insull v. New York World-Telegram Corporation, 273 F.2d 166 (CA7–1959), wherein the Court, again apparently relying on the fact that the circulation of the defendant's publication in the state was negligible, held that the defendant was not "doing business" in the State. In that case also the Court applied the "single publication rule," which rule, in all probability, does not apply in Louisiana. See Buckley v. The Beaumont Enterprise, 232 F.Supp. 986 (E.D.La. 1964).

A close analysis of the New York Times case, together with an analysis of the cases cited in support thereof, leads this Court to believe that the Court of Appeals did not mean to imply that a publishing company could not, under any circumstances, be held to be engaged in business activities in the state when their only activity in the state was the circulation of publications therein, even though the circulation of its publications therein constituted a substantial portion of its overall business. In that case, the Court found, as a fact, that only about 1/1000th of 1% of the business of the New York Times was attributable to sales in the State of Louisiana. There were only 391 daily papers, and 1,784 Sunday papers circulated in Louisiana, despite the fact that population-wise, the State of Louisiana, according to the United States census for the year 1964, accounts for approximately one and one-half per cent of the total population of the United States. The situation in the present case is entirely different. According to the affidavit filed by defendant's treasurer, almost one per cent of defendant's total business, insofar as The Saturday Evening Post is concerned, is done in the State of Louisiana. In view of Louisiana's population, as compared to the country as a whole, this Court is not prepared to say that this is not a substantial part of the defendant's overall business. The circulation of The Saturday Evening Post alone in the State of Louisiana averaged about 60,000 copies for each of its approximately 45 issues per year, during the years 1962, 1963, and 1964, or about one per cent of defendant's total circulation of this particular publication. In addition thereto the Court can hardly overlook the well known fact that The Saturday Evening Post is only one of several publications handled by the defendant, Curtis Publishing Company, and circulated in this and other states. See Curtis Publishing Company v. Cassel, 302 F.2d 132 (CA10–1962). Thus it is apparent that considering the overall operation of the defendant, as compared with the business done by it in Louisiana, its Louisiana business accounts for a fair share of the overall operation. It is therefore hardly possible to conclude that the defendant does not engage in business activities in this State. Indeed, it does a substantial portion of its business here

■ When LSA–R.S. 13:3471 was amended in 1960 to read as it presently does, the purpose of the amendment was to allow the State of Louisiana "to exercise the full potential of jurisdiction in personam over foreign corporations allowed by recent decisions of the United States Supreme Court." See explanatory note following LSA–R.S. 13:3471. It is also important to note that this statute no longer requires that the business activity which brings a defendant within the reach of the statute be carried on by agents or employees located within the State as was required when Sonnier v. Time, Inc., 172 F.Supp. 576 (W.D.La. 1959) was decided. Under the holdings in International Shoe and McGee, the minimum contact requirement necessary to confer jurisdiction is met if it is found that the contacts of the defendant with the forum state are such that the exercise of jurisdiction by maintenance of the case does not "offend 'traditional notions of fair play and substantial justice.'" This principle was reiterated by the Court in the New York Times Company case, supra. And then, after restating the now settled rule of minimum contact as pronounced in International Shoe and McGee, the Court said:

"With an application of these legal principles to the facts concerning the business activities in the State of Louisiana of these several newspaper companies during the years 1960, 1961 and 1962, it is evident that even the broadest view of the principles of International Shoe and McGee will not bring these activities within the 'minimum contacts' rule. The 'quality and nature' of the activities of these newspaper companies during the period involved was not 'continuous and systematic'; to the contrary, these activities constituted at most a 'casual presence' in the State of Louisiana; * * *."

It is thus quite obvious that the Court in the New York Times case did consider, in arriving at its judgment, the extent of the circulation of the defendant's newspapers in the State of Louisiana, and,

after concluding that the amount of circulation involved was only sufficient to constitute a "casual presence" in the State, decided that the minimum contact requirement of International Shoe and McGee simply had not been met. It simply concluded that the mere fact, standing alone, that there was *some* circulation of defendant's newspapers in the State (in this case less than one thousandth of one per cent of its total circulation) was not sufficient to constitute even the minimum contact with the State of Louisiana required by International Shoe and McGee in order for this State to have jurisdiction in personam over the defendant corporations. In other words, either the circulation of the periodical must be of such magnitude as will constitute a "continuous and systematic" activity of the publisher, or, if it is not, a lesser degree of circulation must be accompanied by other activities sufficient to make the quality and nature of the business activity "continuous and systematic". Such, it seems to me, was the import of the holding in Buckley v. New York Times Company, supra.

■ Whether or not a foreign corporation is present within a state and doing business there is a question of fact which must be determined upon the merits of each particular case. International Shoe v. Washington, supra; Home Gas and Fuel Company v. Mississippi Tank Co., 143 So.2d 641 (La.App. 3 Cir. 1961).

■ Thus, applying the law as pronounced in International Shoe and McGee, and as this Court believes it was interpreted by the Fifth Circuit Court of Appeals in Buckley v. New York Times Company, supra, to the facts of this case, it must be concluded that the activities of the defendant, Curtis Publishing Company, consisting of the circulation of approximately 60,000 copies of each of its 45 copies annually of The Saturday Evening Post in Louisiana, together with the circulation of its other publications in this State, conclusively shows that the "quality and nature" of the activities of this publisher in the State of Louisiana was "continuous and systematic" and

of such a substantial nature as to constitute a business activity as contemplated by LSA–R.S. 13:3471. The exercise of jurisdiction of this case by the courts in Louisiana can in no way be considered to "offend traditional notions of fair play and substantial justice." On the contrary, to allow this defendant to reap the harvest of its fair share of business from the State of Louisiana by the sale of tens of thousands of magazines annually, and then to require everyone who may be offended in the State of Louisiana by unfair or improper comment that may be contained therein to journey to New York or to Pennsylvania to seek redress would indeed seem to offend all notions of fair play and justice. If the defendant is allowed to circulate its magazines in great numbers throughout the State of Louisiana; to have the full protection of the State laws in the operation of its business; and to enjoy the benefits of the profits it may derive from its activities in the State, then certainly it must stand accountable in this State for any damage it might do as a result of these activities. As stated in Sonnier v. Time, Inc., supra:

> "Circulation is the source of life to the magazine publisher. Not only are readers a source of revenue, but their number is an important factor in attracting advertising and determining rates therefor. Whatever the technical legal relationship may be between defendant on the one hand and his Louisiana representatives and Louisiana distributors on the other, the latter are but the conduit between the publisher and the reader, and they certainly establish contacts that are essential to the very existence of this defendant. Certainly, from the standpoint of fair play and substantial justice, this suit should be handled in Louisiana."

Thus, inasmuch as this Court concludes that the minimum contact requirement of LSA–R.S. 13:3471 have been met by defendant in this case, and that this holding does no violence to the law as stated in either International Shoe, McGee, or New York Times Company, defendant's motion to quash the service of process and to dismiss for lack of jurisdiction will be denied.