ABNEY MILLS, A CORPORATION, v. TRI-STATE MOTOR TRANSIT COMPANY, A CORPORATION, AND NORTH CAROLINA NATIONAL BANK, A CORPORATION.

(Filed 19 October, 1966.)

1. **Appeal and Error § 49—**

   Findings of fact by the trial court which are supported by evidence are conclusive on appeal.

2. **Process § 13—    Cause of action must arise from business done in this State by foreign undomesticated corporation in order for it to be subject to service under G.S. 55-144.**

   This action was instituted by a nonresident corporation against a nonresident corporation, which had not domesticated or qualified to do business in this State, for breach of contract by the defendant to purchase the controlling stock in a domestic carrier. The findings were to the effect that pursuant to the terms of the contract an agent of defendant came into the State and took complete management of the domestic carrier, and the contract provided that the defendant would assume deficits in the domestic carrier's operations in excess of a specified amount. *Held:* While defendant was doing business in this State during the time its agent was here managing the domestic carrier, the cause of action did not arise out of business so transacted in this State, and therefore service of process under G.S. 55-144 by service on the Secretary of State, is a nullity. This result is not affected by the joinder of a domestic bank having funds of defendant in escrow, no relief being sought from the bank except to require it to pay over the amount held by it in escrow and there being no order of attachment or garnishment of the funds.

APPEAL by defendant Tri-State Motor Transit Company from *Jackson, J.,* at the 13 June 1966 Regular Schedule "B" Civil Session of MECKLENBURG.

This is an action for damages for breach of an alleged contract by Tri-State to purchase shares of stock owned by the plaintiff in Kilgo Motor Freight, Inc. The North Carolina National Bank is alleged to hold $25,000, deposited with it by Tri-State in escrow, pending consummation of the stock transfer whereupon it was to be applied to the purchase price. The complaint alleges that the plaintiff is a corporation of the State of South Carolina and has its principal office therein, and that Tri-State is the corporation of "some state other than North Carolina," having its principal office in Missouri. It alleges that Tri-State, at the time of the events alleged in the complaint, was transacting business in North Carolina. The prayer is for judgment for damages against Tri-State, and for an order directing the Bank to pay over the escrow deposit to the plaintiff for application upon such judgment.

Summons for Tri-State was served upon the Secretary of State. Summons was served upon the North Carolina National Bank in Mecklenburg County by the Sheriff thereof.

Tri-State moved to dismiss the action on the following grounds: (1) The court has no jurisdiction over the person or property of Tri-State; (2) the action does not arise out of business transacted or activities performed in this State and, being an action by a non-resident against a foreign corporation, the Superior Court of Mecklenburg County should not be called upon to entertain it, and the defendant should not be required to defend in this jurisdiction; (3) this being an action which does not arise in North Carolina, and all of the parties being nonresidents, the maintenance of the action in the Superior Court of Mecklenburg County is contrary to the interests of justice and to the convenience of the parties and witnesses. In support of its motion, the defendant alleges that it is a corporation of the State of Delaware, having its principal office in Joplin, Missouri, and that at and after the time this action was instituted it had not engaged in business or transacted business in North Carolina, has not been domesticated in North Carolina, and is not subject to service of process in this State.

The motion to dismiss was first heard by Walker, J., who allowed the motion. From that order the plaintiff appealed to this Court. Upon that appeal the judgment of this Court, reported in 265 N.C. 61, 143 S.E. 2d 235, was:

"Judge Walker's order dismissing plaintiff's action is not supported by determinative findings of fact on the crucial questions presented for decision and it must be vacated, and the cause is remanded for further specific findings of fact, and then for the entry of an order based upon the findings of fact and the conclusions of law made from such findings of fact in accordance with law."

The motion then came on for further hearing before Jackson, J., who entered an order setting forth his findings of fact and conclusions of law, and dismissing the motion of Tri-State. From this order the present appeal is taken.

The findings of fact by Jackson, J., summarized except as indicated, are as follows:

1. The plaintiff is a foreign corporation with its principal office and place of business in South Carolina.

2. Tri-State is a Delaware corporation with its principal place of business in Missouri.

3. Tri-State was a common carrier of explosives in interstate commerce, holding operating rights from the Interstate Commerce Commission in the Middlewest and Southwest, but not operating in or having any place of business in North Carolina, except as otherwise set forth below.

4. Tri-State was authorized by its charter to acquire stock of other corporations.

5. On and prior to 17 August 1960, the plaintiff owned 35 shares of the stock of Kilgo.

6. Kilgo, a North Carolina corporation, was a common carrier, holding operating rights issued by the Interstate Commerce Commission and a certificate of public convenience and necessity from the North Carolina Utilities Commission.

7. Tri-State desired to acquire controlling interest in other common carriers in order to diversify and expand its operations.

8. George F. Boyd, President of Tri-State, was acting at all times within the scope of his authority.

9. Boyd negotiated in South Carolina with one Johnson, attorney in fact for the plaintiff and other stockholders of Kilgo, to purchase their stock, a majority interest.

10. A written contract was executed in South Carolina between Tri-State and Johnson, as such attorney in fact, whereby Tri-State agreed, subject to the approval of the Interstate Commerce Commission, to purchase the stock and to seek from the Commission authority to assume temporary management control of Kilgo. Subject to such authorization by the Commission, the selling stockholders granted and Tri-State accepted the management of the operation of Kilgo. This included general supervision of Kilgo's business, "it being intended that for all practical intents and purposes Buyer (Tri-State) shall be substituted for Kilgo's Board of Directors in the management and control of Kilgo's business affairs, including the specific right to execute checks, notes and commercial instruments in the name of Kilgo." The contract further provided that Tri-State would arrange for sufficient funds to enable Kilgo to prosecute its business in an efficient and profitable manner and that if, during such temporary management by Tri-State, the net deficit of Kilgo increased beyond a specified limit, such additional deficit would be paid by Tri-State to Kilgo.

11. The only other stockholder of Kilgo consented to this contract.

12. The parties thereupon entered into an escrow agreement with the Bank. For purposes and upon terms therein stated, the sellers undertook to deposit their stock certificates in escrow and Tri-State undertook to deposit $25,000 in escrow.

13. The Interstate Commerce Commission granted Tri-State authority "to assume temporary control of Kilgo through management for a period not exceeding 180 days."

14. Thereupon, Tri-State "assumed management control of

Kilgo pursuant to authority of the Interstate Commerce Commission and the terms of the Buy-Sell Contract."

15. Tri-State "sent Boyd to North Carolina to take over active management and control of Kilgo." From then until 2 May 1961, "Boyd spent most of his time managing Kilgo," making his headquarters at its offices in Charlotte. His salary was paid by Tri-State.

16. From 28 September 1960 until 2 May 1961, Tri-State "regularly and systematically managed and controlled the internal affairs and transacted the business of Kilgo, through its officer and agent Boyd."

17. "Tri-State did not domesticate or qualify to do business in North Carolina," but, pursuant to the provisions of the Interstate Commerce Act, "did file with the North Carolina Utilities Commission a 'Designation of Agent for Service of Notices, Orders and Process.'"

18. On 1 February 1961 the Interstate Commerce Commission granted the application of Tri-State to acquire control of Kilgo through the purchase of a majority of its capital stock, this authority to be exercised within 90 days.

19. "On or about 2 May 1961 Boyd left the offices of Kilgo in Charlotte, North Carolina, and did not thereafter return to them. On the same date, an attorney for Tri-State wrote to Johnson in Spartanburg, South Carolina, that Tri-State would not consummate the transaction for the purchase of the Kilgo stock. Tri-State did not make payment for the Kilgo stock * * * and has never done so."

20. This action was instituted as to Tri-State by the issuance of summons with an extension of time for the filing of the complaint on 30 April 1964, which summons was served upon the Secretary of State and was thereafter received from the Secretary of State by Tri-State via registered mail. In due time the complaint was similarly served and forwarded by the Secretary of State to Tri-State.

Upon these findings of fact Jackson, J., concluded:

1. Tri-State was present in and transacting business in North Carolina during the period 28 September 1960 until on or about 2 May 1961.

2. The cause of action alleged by the plaintiff in its complaint arises out of such business transacted by Tri-State in North Carolina.

3. The court has jurisdiction over the person of Tri-State in this action.

Jackson, J., therefore, ordered and adjudged that the motion of

Tri-State be dismissed and that it be granted 45 days from the date of his order to answer or otherwise plead in the action.

Tri-State excepted to and assigns as error the above findings of fact 8, 15, 16 and 17 on the ground that they are unsupported by the evidence in the record. It also excepted to and assigns as error each of the foregoing conclusions, and the failure of the court to make findings of fact and draw conclusions of law tendered by it.

*Blakeney, Alexander & Machen for defendant appellant.*
*Of Counsel: Linde, Thomson, Van Dyke, Fairchild & .Langworthy.*
*Ervin, Horack, Snepp & McCartha for plaintiff appellee.*

LAKE, J. The findings of fact to which the defendant excepts are each supported by evidence in the record and are, therefore, conclusive. *Stewart v. Rogers,* 260 N.C. 475, 133 S.E. 2d 155; *Hodges v. Hodges,* 257 N.C. 774, 127 S.E. 2d 567; *Gasperson v. Rice,* 240 N.C. 660, 83 S.E. 2d 665. These exceptions are, therefore, without merit.

Since, as the trial court found, "Tri-State did not domesticate or qualify to do business in North Carolina," G.S. 55-143(b) has no application. Since, as the court below also found, the plaintiff is a foreign corporation with its principal office and place of business in South Carolina, G.S. 55-145 has no application. Thus, the service of the summons for Tri-State upon the Secretary of State did not give the Superior Court of Mecklenburg County jurisdiction over the person of Tri-State unless this action falls within the limits of G.S. 55-144, which reads:

> "Whenever a foreign corporation shall transact business in this State without first procuring a certificate of authority so to do from the Secretary of State or after its certificate of authority shall have been withdrawn, suspended, or revoked, then the Secretary of State shall be an agent of such corporation upon whom any process, notice, or demand in any suit upon a cause of action arising out of such business may be served."

When the principles stated in the opinion of Parker, J., now C.J., in the former appeal of this case to this Court, 265 N.C. 61, 143 S.E. 2d 235, are applied to the findings of fact made by the trial court, which findings are amply supported by the evidence, it is apparent that there was no error in the conclusion of the trial court that Tri-State transacted business in North Carolina.

Tri-State was authorized by its own charter to acquire shares of stock in Kilgo. It contracted to do so and, pending the consumma-

tion of the purchase, Tri-State was authorized by the contract to manage Kilgo's affairs to such an extent as to substitute, for all practical purposes, the judgment of Tri-State for the judgment of the Board of Directors and officers of Kilgo. Tri-State sent its president to North Carolina to exercise this power granted to it. While he was in this State he exercised Tri-State's right and power to hire and fire the personnel of Kilgo, to select the banks in which Kilgo was to carry its accounts, to issue checks and negotiable instruments in the name of Kilgo, and to purchase equipment for Kilgo and dispose of equipment owned by Kilgo. He testified that he did these things while on loan to Kilgo, but Tri-State paid his salary and Tri-State was obligated by its contract to reimburse Kilgo for any deficit in Kilgo's operations during this period in excess of a specified amount. In so managing the prospective subsidiary of Tri-State, President Boyd was acting as Tri-State's agent for the protection and promotion of Tri-State's interest in such prospective subsidiary. It was Tri-State who had the right to manage the affairs of Kilgo. President Boyd's management of those affairs was Tri-State's management of those affairs. That was the transaction of business in North Carolina by Tri-State. See: *Lambert v. Schell,* 235 N.C. 21, 69 S.E. 2d 11; *Harrison v. Corley,* 226 N.C. 184, 37 S.E. 2d 489; *Commercial Trust v. Gaines,* 193 N.C. 233, 136 S.E. 609.

Nevertheless, the service of summons upon the Secretary of State did not give the superior court jurisdiction over the person of Tri-State unless the cause of action upon which the plaintiff sues arose out of the business which Tri-State transacted in North Carolina. *R. R. v. Hunt & Sons, Inc.,* 260 N.C. 717, 133 S.E. 2d 644. The cause of action stated in the complaint is the alleged breach of the contract to purchase the plaintiff's shares of stock in Kilgo. The cause of action is not one "arising out of" the business so transacted by Tri-State in North Carolina unless there is a causal connection between what Tri-State did in North Carolina, through its president, and the plaintiff's cause of action.

The plaintiff does not sue for any act or omission by Tri-State, acting through its president, in the management of the affairs of Kilgo. If Tri-State had never exercised any power to manage the affairs of Kilgo, but in all other respects the facts were as they appear upon this record, the right of the plaintiff to sue for damages for breach of the promise to buy the shares of stock would be the same as it now is. Consequently, the right of action, alleged in the complaint, did not arise out of the actions done for Tri-State by its president in North Carolina in the management of the affairs of Kilgo. Tri-State has transacted no other business in North Carolina.

We may speculate as to whether, in the course of his management of the affairs of Kilgo, the president of Tri-State acquired an insight into the condition of Kilgo which contributed to the decision by Tri-State to break its contract to purchase the plaintiff's shares of stock. If so, the relation between the business transacted in North Carolina and the breach of the contract is too remote to permit the conclusion that the breach arose out of the transaction of the business done in North Carolina.

Consequently, the court below erred in its conclusion that the cause of action alleged by the plaintiff in its complaint arises out of the business transacted by Tri-State in North Carolina. It follows that the court below also erred in its conclusion that it had jurisdiction over the person of Tri-State in this action. The purported service of summons upon Tri-State by leaving a copy thereof with the Secretary of State was a nullity because such service is not authorized by the statute.

The defendant North Carolina National Bank was properly served with summons, but no cause of action is alleged against it and no relief is sought from it except an order that it pay over the deposit now held in escrow for application upon such judgment as the plaintiff may obtain in this action against Tri-State. Since the plaintiff can not obtain a personal judgment against Tri-State in this action, and since the record does not disclose any order of attachment or garnishment of the deposit made by Tri-State in the Bank so as to bring the interest of Tri-State in such deposit within the jurisdiction of the court, the motion of Tri-State to dismiss this action for want of jurisdiction should have been granted.

It is immaterial whether the contract to purchase the stock was to be performed by payment to the plaintiff in South Carolina or by deposit at the North Carolina Bank in Charlotte. If the breach of the contract upon which the plaintiff relies occurred through the failure of Tri-State to make a payment in Charlotte, the cause of action arose in North Carolina, but it did not arise out of business transacted by Tri-State in North Carolina but out of Tri-State's failure to act here as it contracted to do. G.S. 55-144 does not authorize service of summons upon the Secretary of State in all cases where the cause of action arose in this State.

Reversed.