**George EPPS, Plaintiff,**

**v.**

**Harry GOLDEN, and the Hearst Corporation, Defendants.**

**Civ. A. No. 2280.**

United States District Court
W. D. North Carolina,
Charlotte Division.

Sept. 12, 1968.

Paul B. Guthrey, Jr., of Bradley, Gebhardt, DeLaney & Millette, Charlotte, N. C., for plaintiff.

Sol Levine, of Levine & Goodman, Charlotte, N. C., for defendant, Harry Golden.

Kennedy, Covington, Lobdell & Hickman, Charlotte, N. C., for defendant, The Hearst Corp.

## MEMORANDUM OF DECISION

WOODROW WILSON JONES, Chief Judge.

This is an action for damages arising out of an alleged libel contained in a book entitled, "A Little Girl Is Dead", written by the defendant, Harry Golden, and published by the defendant, The Hearst Corporation. The plaintiff is a resident citizen of the State of Georgia; the defendant, Golden, is a resident citizen of Mecklenburg County, North Carolina, and the corporate defendant is a Delaware corporation with its principal place of business in New York City, and has not procured a certificate of authority from the Secretary of State to do business in the State of North Carolina, and has not appointed any process agent in said State.

Plaintiff instituted this action in the Federal District Court for the Western District of North Carolina serving the defendant, Golden, personally, and serving the corporate defendant under the provisions of North Carolina General Statutes § 55-146 as authorized under North Carolina General Statutes § 55-144. The corporate defendant filed Motion to Dismiss under Rule 12, Federal Rules of Civil Procedure, for lack of jurisdiction over the person of the defendant, The Hearst Corporation.

After hearing oral arguments presented by counsel, and after a close examination of the depositions, answers to interrogatories, and briefs filed herein, the Court finds the following facts:

That The Hearst Corporation is engaged in the business of publishing and selling books and some 26 different magazines on a nationwide basis, all of which are published outside of North Carolina. The evidence discloses that Hearst has no publishing house, office, property or agent in the State of North Carolina. Books and magazines are sold by Hearst to eleven (11) wholesale and thirty-seven (37) retail dealers in North Carolina upon orders received by mail and delivery is made to common carriers at the Company's offices or warehouses outside of the State, with title thereto passing to the purchaser upon delivery to the carrier. None of these sales are made upon consignment or in any manner whereby the Company retains title or any security interest therein. All advertisement carried in Hearst publications for North Carolina firms is received and accepted at one of its offices outside of the State. Payment for the advertisement and for the sale of the books and magazines is made by mail to Hearst's offices outside of the State and no person is authorized to collect money for the Company in North Carolina.

The wholesale and retail dealers in North Carolina are independent business concerns and Hearst has no financial interest in said businesses and has no control over these operations.

The Company has an employee residing in Danville, Virginia, who designates himself as a Sales Representative, who assists in promoting sales of books and magazines in North Carolina, South Carolina, Tennessee, and Virginia. He calls upon the wholesale dealers and checks sales and reports to the division office in Atlanta—he is not authorized to collect money from the dealers. He estimates that he spends about 40 per cent of his time in North Carolina calling on wholesale dealers. Hearst has another employee who resides in Richmond, Virginia, and who makes one trip each year to call upon the wholesale dealers in the Elizabeth City, North Carolina, area, and performs the same promotion duties there as performed in other parts of North Carolina by the Danville, Virginia, representative. The Company has a Division Sales Manager who resides in Georgia and is in charge

of sales for Hearst in fifteen (15) Southeastern states, including North Carolina. He has visited North Carolina only twice in nine (9) years and on one of these occasions it was to attend a convention of wholesale dealers. His duties consist entirely of promotion of sales for books and magazines for his company.

Hearst acquired the right to publish the book containing the alleged libel in paper-back edition from the World Publishing Company by a contract made outside of the State of North Carolina and after said book had been originally published in hardback edition by the said World Publishing Company. The evidence discloses that the paper-back book was published by the Avon Division of The Hearst Corporation and was printed and distributed by Hall Printing Company, of Chicago, Illinois, on or about February 1, 1967, and that all copies of said book which eventually were distributed in North Carolina were delivered to common carriers in Chicago, New York, or other points outside of the State of North Carolina. Books of all kinds shipped into the State of North Carolina during the year 1967 by Hearst represented 1.40 per cent of the total books shipped by said corporation during that year, and that the magazines shipped to the State during said year represented 1.21 per cent of the total circulation of said magazines.

Since the plaintiff is a non-resident of the State of North Carolina, G. S. § 55–145 has no application to this case. Abney Mills v. Tri-State Motor Transit Co., 268 N.C. 313, 150 S.E.2d 585 (1966). Thus the service of summons for The Hearst Corporation upon the Secretary of State of North Carolina would not give this court in personam jurisdiction over said defendant unless this action falls within the provisions and limitations of G.S. § 55–144, which reads as follows:

"Whenever a foreign corporation shall transact business in this State without first procuring a certificate of authority so to do from the Secretary of State or after its certificate of authority shall have been withdrawn, suspended, or revoked, then the Secretary of State shall be an agent of such corporation upon whom any process, notice, or demand in any suit upon a cause of action arising out of such business may be served."

There are three conditions precedent to valid service under this section, namely: (1) the foreign corporation must transact business in this State; (2) the foreign corporation must transact business in this State without first procuring a certificate of authority from the Secretary of State; and (3) there must be a cause of action arising out of such business.

It is admitted that Hearst is a foreign corporation and has not procured a certificate of authority from the Secretary of State to operate in North Carolina, thus leaving only the questions for resolution of whether Hearst transacted business in North Carolina, and, if so, does the alleged cause of action arise out of such business. Abney Mills v. Tri-State Motor Transit Co., 265 N.C. 61, 143 S.E.2d 235 (1965).

We now turn to the decisions of the Supreme Court of North Carolina to determine what constitutes "transacting business in this State". In the case of Putnam v. Triangle Publications, Inc., 245 N.C. 432, 96 S.E.2d 445 (1956), we have a factual situation somewhat similar to the facts of the case at bar. In that case, as in this, it was an action for damages for an alleged libel for an article written by someone else and published by the defendant Publications Company in Pennsylvania, which distributed said publications by delivering same to common carriers in a state other than North Carolina for shipment to eighteen (18) wholesale dealers in North Carolina who in turn retailed said publications to the general public. In the Putnam case the Publications Company had three (3) agents who did not reside in North Carolina but who frequently visited the eighteen (18) wholesale distributors. In the Putnam case, as in the case at bar,

there was no agent, no office, no property and no publishing house in North Carolina. In an exhaustive opinion, Judge Parker, now Chief Justice, held that:

"the defendant has no contacts, ties or relations with North Carolina so as to make it amenable to service of process from the Courts of the State for the purpose of a judgment in personam against it. The occasional visits of the agents of the defendant to the State as sales promotion representatives, upon the facts as found by the Judge, are not deemed sufficient to render the defendant liable to suit in State Courts."

█ More contacts with the forum state are required in order to come within the limits of G.S. § 55–144 than are required under G.S. § 55–145. The Fourth Circuit Court said in Bowman v. Curt G. Joa, Inc., 361 F.2d 706 (1966):

"N.C.G.S. § 55–144 concerns 'foreign corporations transacting business in the state' and, therefore, necessarily seems to be more restrictive in its application than G.S. § 55–145, the latter section dealing with 'foreign corporations *not* transacting business' [emphasis added] in the state. Such an interpretation has been given in Worley's Beverages, Inc. v. Bubble Up Corp., 167 F.Supp. 498, 504 (E.D.N.C.1958); a decision referred to by the Supreme Court of North Carolina in Abney Mills v. Tri-State Motor Transit Co., 265 N.C. 61, 143 S.E.2d 235, 241 (1965). In stating that it is more restrictive, we, of course, mean that the foreign corporation must have more contacts with the forum state in order to come within the statutory limits."

█ This Court therefore concludes that upon the facts of this case, the defendant, Hearst, was not transacting business in North Carolina within the constitutional meaning of G.S. § 55–144, and that G.S. § 55–145 has no application to this case since the plaintiff is a non-resident of the State of North Carolina.

Since the Court has reached the conclusion that defendant, Hearst, was not transacting business in North Carolina, it is not necessary to reach the other prerequisite to valid service in this case, that is, whether the cause of action arose out of such business. The plaintiff would have some high hurdles to cross in this Court if the Court had found that Hearst was transacting business in the State. In the Putnam case the Court held squarely against the plaintiff's contentions here. It held:

"[That] the magazines * * * containing the article complained of by plaintiff, were brought into this State by independent contractors, by common carrier, and not by the defendant. Legal ownership and title to these magazines passed from the defendant to these independent contractors upon its delivery of these magazines to a common carrier in a foreign state. These magazines were put into circulation in North Carolina by these independent contractors and not by the defendant."

The publication and distribution of the book in question was completed outside of North Carolina. The plaintiff alleges he lives in Cedartown, Georgia, and that the publication and distribution of the book has embarrassed, mortified and humiliated him in his community among his friends and fellow citizens. He does not allege that he has been in North Carolina or that he has been in any way injured in this State. He can bring this action in his home state of Georgia where the injury occurred and obtain service on the defendant, Hearst, there where a Division Office is located.

The plaintiff relies upon and cites to the Court the following cases:

International Shoe Co. v. Washington, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95 (1945)

Worley's Beverages, Inc. v. Bubble-Up Corporation, 167 F.Supp. 498 (E.D.N.C.1958), and

Golino v. Curtis Publishing Company, 248 F.Supp. 576 (E.D.La.1965)

He quotes the general principle laid down in the Shoe Company case, to-wit:

"Due process requires only that in order to subject a defendant to judgment in personam, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"

This Court and all other Courts now recognize this general principle of law, but the factual situation existing in the Shoe Company case was quite different from the facts in the case at bar. The Shoe Company had thirteen (13) salesmen who resided in the State of Washington and sold its products exclusively. They solicited a large volume of business and their annual commissions ran as high as $31,000.00. At times they rented sample rooms in office buildings or hotels where the Company's products were exhibited to customers.

The Bubble-Up Company had entered into a franchise agreement to grant the plaintiff an exclusive franchise to bottle and sell the Bubble-Up beverage in North Carolina, and defendant had representatives who made regular calls in North Carolina to sell and promote the beverage. These representatives advised distributors as to methods of promotion and proper merchandising, and the Company allowed a credit for local advertising expenses to its distributors based on the amount of beverage sold. It supplied advertising format and material and advised the distributors as to the most effective advertising methods. It would have representatives in the State when a distributor was introducing Bubble-Up into a new area to assist in the promotion campaign. It was interested in and insisted upon the distributor supplying the beverage according to its formula even though it sold only the concentrate base.

The Louisiana case is based upon a Louisiana statute and the plaintiff in the action was a resident of that State.

It might be pointed out also that the plaintiffs in the Shoe Company case and the Bubble-Up case were residents of the States in which the actions were brought.

Plaintiff's contentions and his citations of cases have greater application to G.S. § 55–145 than to G.S. § 55–144, but Section 145 is not available to him. If the plaintiff had been a resident of North Carolina and the provisions of the "Long Arm Statute", G.S. § 55–145 had been available to him a different result might be reached.

However, on the facts of this case the Court holds that service of process on the Secretary of State did not effect in personam jurisdiction over the defendant corporation, and its Motion to Dismiss should be allowed. An order of dismissal will be entered.