**THROWING CORPORATION OF AMERICA, Plaintiff,**

v.

**DEERING MILLIKEN RESEARCH CORPORATION and Deering Milliken, Inc., Defendants.**

**TEXTURED FIBRES, INC., Plaintiff,**

v.

**DEERING MILLIKEN RESEARCH CORPORATION, Defendant.**

**Nos. C–140–G–68, C–141–G–68.**

United States District Court
M. D. North Carolina,
Greensboro Division.

Aug. 6, 1969.

See also 4 Cir., 415 F.2d 875.

McNeill Smith, Smith, Moore, Smith, Schell & Hunter, Greensboro, N. C., for plaintiffs.

A. L. Meyland, Greensboro, N. C., and Robert F. Conrad and Kurt Shaffert, Washington, D. C., for defendant.

## MEMORANDUM OPINION

EDWIN M. STANLEY, Chief Judge.

The plaintiff in each of these actions seeks declaratory judgment as to the meaning of identically worded royalty provisions in two license agreements. The plaintiff, Throwing Corporation of America (hereinafter referred to as Throwing Corporation), is a North Carolina corporation maintaining its principal office and place of business in Alamance County, North Carolina. The plaintiff, Textured Fibres, Inc. (hereinafter referred to as Textured Fibres), is a Delaware corporation maintaining its principal office and place of business in Randolph County, North Carolina. The defendant, Deering Milliken Research Corporation (hereinafter referred to as DMRC), is a South Carolina corporation maintaining its principal office and place of business in Spartanburg, South Carolina.

Jurisdiction is based on diversity of citizenship and substituted service of process was made on DMRC in accordance with the North Carolina long-arm statute,[1] as is permitted by Rule 4(d)(7) of the Federal Rules of Civil Procedure. Deering Milliken, Inc., a defendant in No. C–140–G–68, concedes that it has been served with a process and is properly before the Court.

DMRC made a special appearance and moved to dismiss both actions, or in lieu

1. N.C.G.S. § 55–146.

thereof to quash the return of service of summons, on the grounds that (1) it is a corporation organized and existing under the laws of the State of South Carolina with its principal place of business in Spartanburg, South Carolina, (2) it has not been domesticated under the laws of the State of North Carolina and has not appointed a resident process agent, (3) it has not by any action or inaction on its part designated the Secretary of the State of North Carolina as its agent for the service of process, and (4) the service of process upon the Secretary of the State of North Carolina, and return thereof, in these actions are insufficient to subject the DMRC to the jurisdiction of this Court.

In order to determine the jurisdictional questions presented by the motions, a brief review of the pertinent facts is necessary. On September 25, 1963, DMRC entered into a license agreement with a company named Virginia Mills, Inc., and this is the agreement which is the subject of controversy in No. C–140–G–68, in which Throwing Corporation is the plaintiff. On May 1, 1964, DMRC entered into a license agreement with Textured Fibres, which is the subject of the controversy in No. C–141–G–68. The two written agreements are executed on identical printed forms, differing only in the typewritten additions thereto. All such differences are irrelevant to a resolution of the motions before the Court. The preambles of these agreements cite that DMRC has exclusive rights to certain inventions and technical information relating to processes and devices for the manufacture of crimped synthetic yarns based upon the application of a false twist, the processes being called "FT processes" and the devices being called "FT machines." Each of the agreements provided that in exchange for a payment of royalties DMRC will not enforce these exclusive rights against the licensee.

Plaintiffs bought FT machines manufactured by a French machinery manufacturing company known as A.R.C.T. The license agreements require the li-censee to keep track of the extent to which it uses the machines in the conduct of manufacturing yarns for its customers as a measure of the royalties paid to DMRC under the license agreement, and also permits DMRC to audit these records. The license agreements further provide for DMRC to furnish the licensee with such technical information and "know-how" which it deems necessary to enable the licensee to practice the invention, and to continue to furnish such additional technical information and "know-how" as DMRC may have or develop during the life of the license agreements. Such technical information is largely the result of research and development effort by DMRC at its corporate headquarters and laboratories at Spartanburg, South Carolina. A significant portion of this technical information is developed by the scientists and engineers of DMRC in response to requests made by licensees. On occasions, personnel of DMRC has visited the plants of licensees in North Carolina in order to facilitate the handling of technical problems encountered by the licensees. DMRC has 10 employees who have performed technical services to licensees in North Carolina at one time or another. On occasions, DMRC has employed independent manufacturers in North Carolina to perform work for it in North Carolina.

DMRC has 23 licensees located in North Carolina, 9 of which are similar to the licenses in these actions. DMRC states that in 1968 it received royalties of more than $10,000.00 from 14 of its licensees in North Carolina. The licensees are required to maintain true, accurate and detailed records showing all information necessary to the computation of royalties, and DMRC has adopted an audit program of its licensees, including its several licensees in North Carolina. It was the result of one of these audits that precipitated the present controversies.

DMRC has at various times in publications distributed in olina. Its advertising has b

in such publications as the Daily News Record, National Review, Women's Wear Daily, Sports Illustrated, True, Red Book, and Life Magazine. Additionally, technical representatives and officers of DMRC have visited corporations in North Carolina from time to time to acquaint time with available licensing programs.

DMRC is a corporation engaged in the conduct of research and development, and is not engaged in the manufacture or sale of goods, products or equipment. Much of the technology with which it deals is related to the textile industry. In the course of its business activities, DMRC obtains exclusive legal rights to certain inventions and grants licenses and technical information to interested parties. DMRC is not domesticated in the State of North Carolina, nor is it authorized to transact business in this State. It has no mailing address or telephone number in this State. The license agreements in question were signed by the plaintiffs in this State and then executed by DMRC at its Spartanburg office.

N.C.G.S. § 55–144 provides:

"§ 55–144. Suits against foreign corporations transacting business in the State without authorization.— Whenever a foreign corporation shall transact business in this State without first procuring a certificate of authority so to do from the Secretary of State or after its certificate of authority shall have been withdrawn, suspended, or revoked, then the Secretary of State shall be an agent of such corporation upon whom any process, notice, or demand in any suit upon a cause of action arising out of such business may be served."

N.C.G.S. § 55–145 provides, in its pertinent parts, as follows:

"§ 55–145. Jurisdiction over foreign corporations not transacting business in this State.—(a) Every foreign corporation shall be subject to suit in this State, by a resident of this State or by a person having a usual place of business in this State, whether or not such foreign corporation is transacting or has transacted business in this State and whether or not it is engaged exclusively in interstate or foreign commerce, on any cause of action arising as follows:

"(1) Out of any contract made in this State or to be performed in this State."

As will be noted, G.S. § 55–144 concerns foreign corporations "transacting business" in the State, and G.S. § 55–145 is applicable whether or not the foreign corporation "is transacting or has transacted business in this State." Additionally, the provisions of G.S. § 55–145 are only available to a resident of this State or to a person having a usual place of business in this State.[2]

The plaintiffs contend that since the uncontroverted facts clearly disclose that DMRC is transacting substantial business in North Carolina, and since these actions arise out of contracts to be performed in this State, the Court has jurisdiction over the person of DMRC under both G.S. § 55–144 and G.S. § 55–145. DMRC, on the other hand, argues that neither section is applicable to the factual situation here presented, and that the actions should be dismissed. Significantly, however, DMRC does not base its objection to jurisdiction over it upon constitutional grounds, and does not contend that the assumption of jurisdiction over it would violate the due process requirements of the Fourteenth Amendment to the Constitution of the United States.

■ This being a diversity case, and it having been conceded that DMRC was served with process in the manner provided by G.S. § 55–146, this Court must

2. Since Throwing Corporation is a North Carolina corporation maintaining its principal office and place of business in North Carolina, and Textured Fibres, while a Delaware corporation, maintains its principal office and place of business in North Carolina, the provisions of G.S. § 55–145 are applicable to both plaintiffs.

look to the construction given the statutes in question by the State courts. Bowman v. Curt G. Joa, Inc., 4 Cir., 361 F.2d 706 (1966).

In Mills v. Tri-State Motor Transit Company, 268 N.C. 313, 150 S.E.2d 585 (1966), the defendant contracted to purchase stock owned by the plaintiff in Kilgo Motor Freight, Inc. The plaintiff was a foreign corporation with its principal office and place of business in South Carolina, the defendant was a Delaware corporation with its principal place of business in Missouri, and Kilgo was a North Carolina corporation. A written contract for the purchase of the stock was executed in South Carolina. Pending approval of the transaction by the Interstate Commerce Commission, Tri-State took over the actual management of Kilgo in North Carolina. After approval of the stock transfer by the Interstate Commerce Commission, Tri-State declined to consummate the transaction for the purchase of the Kilgo stock. An action for damages for alleged breach of contract was instituted in North Carolina, and substituted service was made upon the Secretary of State pursuant to the provisions of G.S. § 55–144. After observing that G.S. § 55–145 had no application for the reason that the plaintiff was a foreign corporation with its principal office and place of business in South Carolina, the Court stated that Tri-State, by coming into North Carolina and managing the affairs of Kilgo for almost a year, transacted business in North Carolina within the meaning of G.S. § 55–144. However, since the cause of action alleged in the complaint did not "arise out of" the business transacted by Tri-State in North Carolina, and there was no causal connection between what Tri-State did in North Carolina and its alleged breach of contract to purchase Kilgo stock, substituted service was not sustained.

There can be no question that the activities of DMRC in North Carolina are considerably more substantial, continuous and systematic than the activities of Tri-State. The place of the execution of the contract is of no significance. DMRC has 23 licensees located in North Carolina, 9 of which are similar to the licenses in this action. In answer to interrogatories, DMRC states that it received royalties of more than $10,000.-00 from 14 of its licensees in North Carolina during the year 1968. This is obviously a very substantial business. · The licensees are required to maintain accurate and detailed records showing all information necessary to the computation of royalties, and DMRC has adopted a program of sending auditors into North Carolina for the purpose of examining the books and records of its licensees. One of such audits precipitated the present controversies. The licenses extend over a long period of years, and the large volume of business DMRC does in North Carolina can in no way be characterized as casual, or as constituting single or isolated acts. There can be no question that Mills v. Tri-State Motor Transit Company, *supra,* is clear authority for holding that DMRC is engaged in the transaction of business in North Carolina, and that these actions arise out of business so transacted.

Neither can there be any question that the causes of action alleged in the complaints arise out of contracts "to be performed in this State," thus making G.S. § 55–145(a) (1) clearly applicable. In Byham v. National Cibo House Corporation, 265 N.C. 50, 143 S.E.2d 225 (1965), the defendant, a Tennessee corporation, entered into a written contract granting the plaintiff, a resident of North Carolina, a franchise for the operation of an eating establishment known as "Cibo House." Plaintiff sued for a breach of the contract, and service of summons was had by service on the Secretary of the State in accordance with the provisions of G.S. § 55–146(a), (b). The defendant entered a special appearance and moved to quash the service of process. Upon a finding that the action grew out of a contract to be performed within the State of North Carolina, in personam jurisdiction of the corporate defendant was sustained.

DMRC purposely availed itself of the privilege of conducting extensive business activities in this State, thus invoking the benefits and protections of its law, and since the licensing agreements sued upon are, by their terms, to be performed wholly in North Carolina, G.S. § 55–145(a) (1) makes available to the plaintiffs the courts of this State to litigate their grievance with DMRC. Byham v. National Cibo House Corporation, *supra*. Also, see Worley's Beverages, Inc., v. Bubble Up Corp., 167 F. Supp. 498 (E.D.N.C.1958).

In Southern Machine Company v. Mohasco Industries, Inc., 6 Cir., 401 F.2d 374 (1968), the Court, construing a Tennessee statute similar to G.S. § 55–145(a) (1), experienced no difficulty in sustaining in personam jurisdiction since the action involved the construction of a licensing agreement to be performed in the State of Tennessee.

For the reasons stated, it is concluded that the service of process on DMRC in each of these actions was in all respects valid, and that the motions of DMRC to dismiss should be denied.

It is so ordered.