James R. **WALKER**, individually, and James R. Walker, doing business as Walker & Co., Appellants,

v.

Joseph F. **WIAR** and Ruth Anna Wiar, Appellees.

No. 6193.

United States Court of Appeals Tenth Circuit.

Feb. 16, 1960.

Robert W. Johnson, Aurora, Colo., for appellants.

James E. Tarter, Colorado Springs, Colo., for appellees.

Before MURRAH, Chief Judge, LEWIS, Circuit Judge, and WALLACE, District Judge.

WALLACE, District Judge.

The trial court, sitting without a jury, found that the appellants, as agents for the owners of certain realty located in Colorado Springs, Colorado, sold such real estate to the appellees at a price in excess of the property's reasonable value as determined by the Administrator of the Veterans' Administration in violation of the Servicemen's Readjustment Act of 1944, as amended, and awarded treble damages for such overcharge.[1]

Appellants urge that James R. Walker did not knowingly make, effect or participate in a sale of property to the appellees in contravention of the Act in question; that the trial court's findings are contrary to the introduced evidence and applicable law; and that the violation, if any, was committed by Walker & Co., a Colorado corporation, not a party to this suit, and that therefore the judgment against the appellants is erroneous.

The following facts are undisputed: The appellees, Joseph F. Wiar, a Master Sergeant in the United States Army, and his wife, Ruth Anna, came to Colorado Springs in the summer of 1955 and contacted the appellants, duly authorized real estate brokers, concerning the purchase of a home. The appellants showed appellees various properties and as a result the appellees contracted with the owners to purchase the property herein involved for $14,200.[2] An agreement was signed July 16, 1955, and a more formal one was executed July 23, 1955. The appellees paid $1,500 down and agreed to make monthly payments of $85, or more, beginning September 1, 1955, until the principal sum, plus interest at 6% per annum, was fully paid. In addition, the appellees promised to apply for a V.A. loan as soon as the conveyed property was eligible therefor, and from such proceeds, plus any additional sums needed, to pay in full all monies due under said purchase agreement.

The trial court found, among other things, that the negotiations on behalf of the sellers were "all conducted by defendant, James R. Walker doing business as Walker & Co., and his duly appointed agents and employees";[3] "that at the time this Sales Contract was entered into the property in question was not eligible for a V.A. loan for the reason that it had not been constructed for a period of one year";[4] that "the term, 'eligible for said loan' as stated in the contract is construed to mean when the property had been constructed for a sufficient time to enable the Veterans Administration under its rules and regulations to have an appraisal made and a Certificate of Reasonable Value issued.";[5] that on July 31, 1956, the V.A. executed its Certificate of Reasonable Value in the amount of $12,700;[6] that

---

1. 38 U.S.C.A. § 694c–1 [now known as § 1822(a)] provides: "Whoever knowingly makes, effects, or participates in a sale of any property to a veteran for a consideration in excess of the reasonable value of such property as determined by the Administrator, shall, if the veteran pays for such property in whole or in part with the proceeds of a loan guaranteed by the Veterans' Administration under section 694a, 694b, or 694c [now § 1810, 1812, or 1813] of this title, be liable for three times the amount of such excess consideration irrespective of whether such person has received any part thereof."

2. This real estate is located at 1112 East Rio Grande and is legally described as: "Lot 17 except the east 16 feet thereof and lot 18 except the south 69 feet of the west 22 feet, block 1 Prospect Addition to Colorado Springs, in addition to the south 8 feet of vacated alley adjacent on north thereof, the property being in El Paso County, Colorado."

3. Trial Finding (1).

4. Trial Finding (3).

5. Trial Conclusion (4).

6. Trial Finding (5).

the appellants assumed the responsibility for preparing the loan papers and participated in said property's sale on behalf of the sellers, and received a 5% sale's commission from the sellers and a ½% broker's fee for their assistance in obtaining the V.A. guaranteed loan;[7] and that the appellees paid $682.53 in excess of the reasonable value of this property as determined by the Administrator.[8]

Of course, the findings of the trial court are presumptively correct and should not be set aside nor disturbed unless clearly erroneous. F. W. Fitch Co. v. Camille, Inc., 8 Cir., 1939, 106 F.2d 635. See Fed.Rules Civ.Proc. Rule 52 (a), 28 U.S.C.A. Cf. Traders & General Ins. Co. v. Powell, 8 Cir., 1949, 177 F.2d 660. And, we cannot say the findings in question are clearly faulty; contrarily, we believe they are supported by substantial evidence.

Moreover, the trial court has applied appropriate legal conclusions to such facts.

No doubt, real estate brokers and agents, such as appellants, can "participate" in a sale in violation of the Act in question. Cf. Karrell v. United States, 9 Cir., 1950, 181 F.2d 981. And, the unlawful character of the sale is not purged by the fact that the transaction extended over some period of time.

In addition, the evidence supports the trial court's finding that the appellants knowingly took part in the Code's violation and it cannot be said that the judgment entered was against the wrong parties. Appellant Fred Walker told the appellees, at the time the contract for purchase was first signed, that he would help them get a veterans' loan, and he dealt with them from June of 1956 until January of 1957 concerning such loan. He ordered the appraisal; he sent the contract which recited a $12,700 consideration after such had been discussed with the appellees on July 2, 1956; and sometime during this period of time, he commenced to process the V.A. loan papers. All of this was done prior to the incorporation of Walker & Co. on August 27, 1956. Appellants conceived the plan of selling this property on contract until one year had expired so that a Veterans' loan could be obtained; and obviously the intent to misrepresent the selling price to the V.A. was formed prior to Walker & Co.'s incorporation as evidenced by the new contract for $12,700 which supposedly was signed July 2, 1956. Although the corporation may also be legally responsible for the instant violation, the record supports a judgment against the appellants, individually.

The appellees have requested that we allow them a reasonable attorney's fee for handling this appeal; however, we have concluded that such authority is exclusively reposed in the trial court.[9]

Accordingly, the judgment is affirmed.

7. Trial Finding (7).

8. Trial Finding (8). The trial court found the net amount of payments made by appellees after deductions amounted to $1,332.50 and that in addition appellees paid $12,050 from the proceeds of the V.A. loan. Thus, the net amount paid of $13,382.53 was $682.53 more than the Administrator's CRV of $12,700.

9. The second paragraph of 38 U.S.C.A. § 694c–1 states: "Actions pursuant to the provisions of this section may be instituted by the veteran concerned, *in any*

*United States district court, which court may, as a part of any judgment, award costs and reasonable attorneys' fees to the successful party. * * *"* (Emphasis added.) Even though the district judge, in his discretion, did not allow an attorneys' fee for legal services performed up to the time of judgment [See Trial Conclusion (10)] doubtless, such court, if it so desires, could award a reasonable attorneys' fee for handling this appeal and assess same as a part of the costs.