CURTIS PUBLISHING COMPANY, a corporation, Appellant,

v.

Louis CASSEL, Appellee.

No. 6876.

United States Court of Appeals
Tenth Circuit.

March 20, 1962.

---

Malcolm Miller, Wichita, Kan. (Wilbur H. Haines, Jr., Philadelphia, Pa., George B. Powers and Gerald Sawatzky, Wichita, Kan., and Pepper, Hamilton & Scheetz, Philadelphia, Pa., and Foulston, Siefkin, Schoeppel, Bartlett & Powers, Wichita, Kan., of counsel, were with him on the brief), for appellant.

Wayne Coulson, Wichita, Kan. (Jack B. Sellers, Drumright, Okl., Thos. A. Wallace, Sapulpa, Okl., and Byron W. Tabor, Tulsa, Okl., were with him on the brief), for appellee.

Before MURRAH, Chief Judge, BREITENSTEIN, Circuit Judge, and RICE, District Judge.

BREITENSTEIN, Circuit Judge.

In this libel action appellant, Curtis Publishing Company (Curtis), asserts that it is not subject to service of process in Kansas. Suit was begun in a Kansas state court and removed on the ground of diversity. An appropriate motion to quash service of summons was denied. Pursuant to 28 U.S.C. § 1292(b) we allowed an appeal to be taken from such interlocutory order.

There is no dispute in the facts which were established by affidavits and answers to interrogatories. The claim of libel is based on an article appearing in the November 22, 1958, issue of the weekly magazine, The Saturday Evening Post, published by Curtis.

Curtis is a Pennsylvania corporation with its principal place of business in Philadelphia, Pennsylvania. It publishes five magazines, The Saturday Evening Post, Ladies' Home Journal, Holiday, Jack and Jill, and The American Home, all of which, except The American Home, are edited, published, and printed in the Philadelphia area. Such work for The

American Home is done at New York, New York, and Chicago, Illinois. Distribution to Kansas subscribers as accomplished by mail from Philadelphia and Chicago or by common carrier to Kansas City, Missouri, or Kansas City, Kansas, and mail from those points. The national distributor for Curtis publications is Curtis Circulation Company (Distributor), a wholly owned subsidiary of Curtis. Kansas newsstand copies are handled by the sale and delivery of the magazines to Distributor in Philadelphia or Chicago. Distributor resells to independent magazine wholesalers who in turn sell to retailers.

During the period July 1, 1957, to December 31, 1959, the average Kansas subscription circulation per issue of The Saturday Evening Post was 81,013 and the newsstand sales were 13,700. For the other four Curtis publications the figures were 148,191 and 23,829, respectively. In the period November, 1957, to November, 1959, Curtis on four occasions sent personnel to Kansas to assemble material for feature articles and such personnel remained in Kansas for periods varying from four days to two weeks on each assignment. There were 39 instances of the purchase of editorial material from Kansas contributors. In the same period Curtis advertising solicitors visited Kansas on three occasions in unsuccessful efforts to sell advertising space. While Curtis had no office in Kansas, Distributor rented and maintained an office there.

■ Service was made on Curtis by service on the Secretary of State in accordance with Kan.G.S.1949, § 17–509.[1] In this removed case jurisdiction of the federal court over Curtis depends on whether the service was sufficient to give the state court jurisdiction.[2] Curtis says that the service was invalid because it was not doing business in Kansas and because there would be a violation of due process if it were subjected to a personal judgment in Kansas.

Curtis argues that Kansas has defined what constitutes doing business within the state by Kan.G.S.1949, § 17–506,[3] and that Curtis and its activities do not come within that definition. The applicability of the § 17–506 definition is confined to "doing business in this state within the meaning of this act," and the act of which it was a part was passed in 1907.[4] Section 17–509 was enacted in 1933[5] and is a new and distinct act not amendatory of any prior statute.

■ In Toedman v. Nooter Corporation, 180 Kan. 703, 308 P.2d 138, 143, the Kansas Supreme Court said that a foreign corporation may be doing business in the state and amenable to process un-

---

1. The material portions of this statute are these: "In the event of any foreign corporation doing business within the state of Kansas, and failing to appoint the secretary of state as agent upon whom service of summons or other process can be had, or failing to file in the office of the secretary of state duly certified copies of its charter, or failing to pay the license as required by law, any person having any cause of action against such foreign corporation, which cause of action arose in Kansas out of the said foreign corporation's doing business within the state of Kansas, or while such foreign corporation was doing business within the state of Kansas, may file suit against such foreign corporation in the county in this state where such cause of action arose, or in the county in which the plaintiff may reside, and service of summons or any process upon the secretary of state shall be sufficient to warrant the rendition of personal judgment against said corporation."

2. Lambert Run Coal Company v. Baltimore & Ohio Railroad Company, 258 U.S. 377, 382, 42 S.Ct. 349, 66 L.Ed. 671; Ark-La Feed & Fertilizer Company v. Marco Chemical Company, 8 Cir., 292 F.2d 197, 201.

3. This statute provides: "Every corporation organized under the laws of another state, territory or foreign country that has an office or place of business within this state, or a distributing point herein, or that delivers its wares or products to resident agents for sale, delivery, or distribution, shall be held to be doing business in this state within the meaning of this act."

4. Laws of Kansas, 1907, Ch. 140, § 28.

5. Laws of Kansas, Special Session, 1933, Ch. 50.

der § 17–509 although it is not doing business as defined in § 17–506 relative to qualification for registration. Curtis seeks to avoid the effect of this decision by arguing that in Kansas the syllabus is the holding of the court[6] and that the language above-mentioned, while appearing in the body of the opinion, is not in the syllabus. We are entitled to "look to the opinion for the original and authentic statement of the grounds of decision."[7] The excerpt in question is a clear and unequivocal exposition of the law and has at least the standing of dictum. Unless it conflicts with other decisions of the Kansas Supreme Court, it must be followed.[8]

Curtis relies on Williams v. J. F. Ball Bros. Lumber Co., 105 Kan. 284, 182 P. 552. That action was brought against a Louisiana corporation for breach of contract. Service on the Secretary of State was held insufficient on the ground that the activities of an agent authorized to find purchasers for real estate of the corporation but not authorized to execute contracts of sale did not constitute doing business by the corporation in Kansas. The court disposed of the defendant's contention that since it had not qualified to do business in the state service on the Secretary of State was invalid by saying that a corporation might be engaged in doing business in the state without having complied with the statute on qualification. In Weishaar v. Butters Pump & Equipment Co., 149 Kan. 842, 89 P.2d 864, 122 A.L.R. 1190, it was held that the Kansas statute of limitations was not available to a corporation which had not qualified in Kansas and which had conducted business there although not such as to come within § 17–506. Neither of these decisions detracts

from the rule stated in Toedman and we are cited to no other Kansas authority.

We conclude that the Kansas statutes do not define doing business for the purposes of amenability to service under § 17–509 and that the term doing business must be given such practical definition as is consonant with the constitutional requirements of due process.

The impact of the due process clause on the in personam jurisdiction of state courts has presented a continuing problem to the courts which has resulted in a multitude of decisions, none of which, as yet, lay down definitive standards for universal application.[9] The "consent" basis for jurisdiction recognized in Lafayette Insurance Company v. French, 18 How. 404, 59 U.S. 404, 407, 15 L.Ed. 451, and the "presence" doctrine appearing in such cases as Rosenberg Bros. & Company v. Curtis Brown Company, 260 U.S. 516, 517, 43 S.Ct. 170, 67 L.Ed. 372, were succeeded by the "minimum contacts with assurance of fair play and substantial justice" thesis of International Shoe Co. v. Washington, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95.

Following International Shoe, jurisdiction was upheld in the insurance cases of Travelers Health Association v. Virginia, 339 U.S. 643, 70 S.Ct. 927, 94 L.Ed. 1154, and McGee v. International Life Insurance Co., 355 U.S. 220, 78 S.Ct. 199, 2 L.Ed.2d 223. Jurisdiction was also upheld in Perkins v. Benguet Consolidated Mining Co., 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485, wherein the corporate activities were within the state and the cause of action arose out of the state. Jurisdiction was denied in Vanderbilt v. Vanderbilt, 354 U.S. 416, 77 S.Ct. 1360, 1 L.Ed.2d 1456, a divorce case, and in Hanson v. Denckla, 357 U.S. 235, 78 S.Ct.

6. Kan.G.S.1949, § 60–3329 and § 20–111.

7. Burbank v. Ernst, 232 U.S. 162, 165, 34 S.Ct. 299, 58 L.Ed. 551.

8. Hawks v. Hamill, 288 U.S. 52, 56–59, 53 S.Ct. 240, 77 L.Ed. 610; Whitaker v. Texaco, 10 Cir., 283 F.2d 169, 174.

9. The subject is reviewed in Westcott-Alexander, Incorporated v. Dailey, 4 Cir.,

264 F.2d 853. Professor Kurland's article on "The Supreme Court, The Due Process Clause, and The In Personam Jurisdiction of State Courts: 1877–1958," appearing in 8 University of Chicago Law School Record, Special Supplement, Autumn 1958, p. 65, is both comprehensive and impressive.

1228, 2 L.Ed.2d 1283, a suit involving a trust. While these last two decisions disclose that the concept of territorial limitations on state power has not been discarded, it is noteworthy that each of them involved private rather than corporate activities [10] and that neither questioned the validity of the "minimum contact-fair treatment" rule of the International Shoe decision.

■ We believe that International Shoe is controlling and that the instant controversy must be resolved by the application of the principles there announced. Those principles are stated as conclusions and do not provide the criteria required to sustain themselves. We followed International Shoe in Steinway v. Majestic Amusement Co., 10 Cir., 179 F.2d 681, 682–684, 18 A.L.R.2d 179, certiorari denied 339 U.S. 947, 70 S.Ct. 802, 94 L.Ed. 1362 and there said that, leaving every case to its own facts, to constitute doing business a nonresident corporation's activities must be substantial, continuous, and regular as distinguished from casual, single, or isolated. We shall apply these standards here.

As said in Sonnier v. Time, Inc., W.D. La., 172 F.Supp. 576, 579, circulation is the source of life to the magazine publisher because the readers provide revenue and their number is an important factor in attracting advertising and in determining rates therefor. The Curtis publications are in themselves advertising media. They advertise in Kansas to their Kansas readers the products of those who purchase advertising space.

■ Curtis has chosen to turn over the circulation of its publications to its wholly owned subsidiary, Distributor.

The written contract between the parent and the subsidiary provides that Distributor "shall have the exclusive right throughout the world to solicit and make subscription sales" of Curtis' magazines. Distributor pays to Curtis monthly "the full subscription price for all subscription sales made during the month" and Curtis pays to Distributor monthly "the prescribed commission on all paid subscription orders."

Distributor also has "the exclusive right throughout the world to distribute and sell single (newsstand) copies" of Curtis' magazines. As to such sales Distributor furnishes Curtis with estimates of its requirements and Curtis delivers the magazines to Distributor at agreed prices and at points designated by Distributor. Distributor receives full credit for unsold copies by compliance with prescribed conditions.

Curtis reimburses Distributor for "specified promotional and advertising expenses attributable to the solicitation of subscriptions for, and distribution and sale of single (newsstand) copies" of Curtis' magazines.

Distributor is required to "provide an adequate organization and means for the promotion, sale and distribution of [Curtis'] magazines and shall use its best efforts to maintain and increase the circulation thereof." [11]

Distributor, which is independently staffed and operated, also distributes for a number of other publishers including Esquire, Cowles Magazines, Newsweek, Conde Nast Publications, the New Yorker, Street & Smith publications, the Atlantic Monthly, and Harper and Brothers. Distributor maintained an office in Wichita, Kansas. The number of its em-

10. Professor Ehrenzweig in his article "Pennoyer is Dead—Long Live Pennoyer," 30 R.M.Law Rev. 285, suggests that there is a difference between jurisdiction over corporations and individuals because corporate action is necessarily business action whereas personal action is not. Doubt is cast on the validity of this conclusion by the statement in McGee v. International Life Insurance Co., 355 U.S. 220, 222, 78 S.Ct. 199, that:

"Looking back over this long history of litigation a trend is clearly discernible toward expanding the permissible scope of state jurisdiction over foreign corporations and other nonresidents."

11. The references to and quotations from the Curtis-Distributor contract are taken from answers made by Curtis to interrogatories propounded by the plaintiff Cassel.

ployees in Kansas is not shown by the record.

The first query is whether Curtis may be held to have been doing business in Kansas because of the activities of its wholly owned but independent subsidiary. In Cannon Manufacturing Company v. Cudahy Packing Company, 267 U.S. 333, 45 S.Ct. 250, 69 L.Ed. 634, Cudahy was sued in a North Carolina state court for breach of contract and service was made on a wholly owned and completely dominated subsidiary used by Cudahy to market its products in that state. The Court noted that Cudahy was doing business in North Carolina but went on to say that the question was whether Cudahy was doing business within the state "in such a manner and to such an extent as to warrant the inference that it was present there" and held that "such use of a subsidiary does not necessarily subject the parent corporation to the jurisdiction." The Court pointed out that the subsidiary bought from Cudahy out of the state and sold within the state and did not act as Cudahy's agent. The importance of the agency relationship was emphasized in National Carbide Corp. v. Commissioner of Internal Revenue, 336 U.S. 422, 438–439, footnote 21, 69 S.Ct. 726, 93 L.Ed. 779, by the citation of Cannon v. Cudahy as authority for the proposition that: "As principal it would have been subject to service of process through its agents; as owner of the subsidiary it was not."

Cannon v. Cudahy was decided at a time when the "presence" doctrine was invoked by the United States Supreme Court to determine the amenability of foreign corporations to in personam jurisdiction. At the very least there is strong implication in the Cannon decision that a corporation may be present through an agent. In Hoopeston Canning Co. v. Cullen, 318 U.S. 313, 63 S.Ct. 602, 87 L.Ed. 777, the Court upheld regulation by New York of an Illinois company which made insurance contracts in

Illinois affecting New York risks and said that in determining whether insurance business is done within a state for the purpose of determining the regulatory power of the state, the location of activity prior and subsequent to contract making, the degree of interest of the regulating state in the object insured, and the location of the insured property "are separately and collectively of great weight." In International Shoe, Hoopeston is cited as authority for the holding that activities which establish corporate "presence" subject it to both taxation by a state and to suit to recover the tax.[12] This enlargement of the concept of doing business to require only "certain minimum contacts" to make a foreign corporation subject to in personam jurisdiction, provided the exercise of such jurisdiction accords with "traditional notions of fair play and substantial justice,"[13] is not limited by the Kansas statute. The instant case presents no question of adequacy of notice by service on the Secretary of State or of denial of full opportunity to be heard. Due process is satisfied if in fact Curtis was doing business in Kansas.

As we read the Supreme Court decisions, complete stock ownership of a corporation does not of itself make a parent corporation subject to local jurisdiction in a state where the subsidiary operates but the parent does not. This does not detract from the proposition that, as all corporations must necessarily act through agents, a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to doing business of the parent, the parent is subjected to the in personam jurisdiction of the state in ternational Shoe does not repudiate the "presence" doctrine it, at the very least, permits presence to be inferred from "minimum contacts."

We are not impressed by the argument that the Curtis-Distributor contract was one of sale and purchase rather than

12. 326 U.S. 321, 66 S.Ct. 154, 90 L.Ed. 95.

13. Milliken v. Meyer, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278.

of agency.[14] Subscription payments are remitted to Curtis which pays Distributor a commission thereon. While Distributor purchases newsstand copies at an agreed price for delivery at the point designated by it, Distributor receives credit from Curtis for unsold copies. Distributor is required to use its best efforts to promote Curtis publications and for so doing it is reimbursed by Curtis. Thus, the risk of success or failure in publication is taken by Curtis. In our opinion Distributor was the agent of Curtis.

The contacts of Distributor in Kansas were well above the minimum necessary to constitute doing business. Their substantial nature is shown by the combined circulation of Curtis publications in Kansas of 266,733 copies per issue. Their continuity is established by occurrence over a prolonged period and their regularity rather than infrequency is apparent. The tests laid down by Steinway v. Majestic Amusement Co., supra, have been met. The contacts are well within the minimum-contact principle announced in International Shoe Co. These activities of its agent amount to the doing of business in Kansas by Curtis and suffice to subject it to the in personam jurisdiction of the Kansas courts.

In reaching this conclusion we are aware of decisions of United States Courts of Appeal holding that the mailing of publications to subscribers, the distribution thereof through local independent contractors, and the solicitation of subscriptions by an independent distributor are insufficient to support a claim of doing business or to support in personam jurisdiction.[15] None of those cases were decided on the agency principle which we believe to be controlling here. The Tenth Circuit decision in Steinway v. Majestic Amusement Co., supra, is not contrary. That case held that ownership and voting of a majority of the stock of a domestic corporation is not sufficient to confer jurisdiction over a nonresident parent corporation when service is made on the domestic subsidiary. No question of agency was involved.

■■ One point remains to be considered. Section 17–509 makes a foreign corporation doing business in Kansas amenable to substituted service when the "cause of action arose in Kansas out of the said foreign corporation's doing business within the state of Kansas, or while such foreign corporation was doing business within the state of Kansas." The cause of action asserted here arose while

14. The reliance of Curtis on J. R. Watkins Co. v. Waldo, 117 Kan. 250, 230 P. 1051, is misplaced. That case involved the sale and delivery of goods outside of the state to a dealer who in turn sold the goods in Kansas with the producer having no control over the profits of the dealer and no concern over the dealer's losses.

15. In Street & Smith Publications, Inc. v. Spikes, 5 Cir., 120 F.2d 895, certiorari denied 314 U.S. 653, 62 S.Ct. 102, 86 L.Ed. 524, and Whitaker v. Macfadden Publications, Inc., D.C.Cir., 105 F.2d 44, service made on local distributors was held bad in libel actions against the publishers. Insull v. New York, World-Telegram Corporation, 7 Cir., 273 F.2d 166, certiorari denied 362 U.S. 942, 80 S.Ct. 807, 4 L.Ed. 2d 770, held invalid service made in a libel action when the claim of doing business was based on the shipment of publications to subscribers or to independent contractors for resale. Schmidt v. Esquire, Inc., 7 Cir., 210 F.2d 908,

certiorari denied 348 U.S. 819, 75 S.Ct. 31, 99 L.Ed. 646, held that Reader's Digest was not doing business in Indiana by the solicitation of subscriptions through community representatives and neither was Esquire which supplied subscribers by mail and newsstands through an independent contractor. Cannon v. Time, Inc., 4 Cir., 115 F.2d 423, holds that in a libel action a publisher was not subject to the personal jurisdiction of Virginia when service was made on the agent of an independent solicitor, the court saying that solicitation of business, and collections in connection therewith, by an agent do not constitute such a doing of business as to subject the foreign corporation to the local jurisdiction. Polizzi v. Cowles Magazines, Inc., 345 U.S. 663, 73 S.Ct. 900, 97 L.Ed. 1331, is not in point as the case was decided on a venue question without any ruling being made as to personal jurisdiction.

Curtis was doing business in that state. There was communication of the claimed libelous material to people in Kansas.[16] No good purpose is served by speculation as to whether Kansas will follow the multipublication or the single-publication rule in libel cases. As yet there is no Kansas decision on the subject. We have here no statute of limitation question and no other action pending. Whatever choice of laws or conflict of laws questions may arise in the trial, they are not now before us. Libel is a transitory rather than a local action.[17] Each distribution of a libelous article is a tort.[18] The problems discussed in Dale System, Inc. v. Time, Inc., D.Conn., 116 F.Supp. 527, are not presented. It is enough that the cause of action arose while Curtis was doing business in Kansas.

Affirmed.

16. Kan.G.S.1949, § 21–2405, provides: "The delivery, selling, reading, or otherwise communicating a libel, or causing the same to be delivered, sold, read or otherwise communicated to one or more persons, or to the party libelled, is a publication thereof."

17. Christopher v. American News Co., 7 Cir., 171 F.2d 275, 277.

18. Restatement, Torts, § 578, comment b.