Herman QUARLES et al., Plaintiffs-
Appellants,

v.

FUQUA INDUSTRIES, INC., et al.,
Defendants-Appellees.

No. 73–1825.

United States Court of Appeals,
Tenth Circuit.

Argued Aug. 20, 1974.

Decided Nov. 5, 1974.

---

4. It is worthy of note that the jury acquitted on three of the seven counts submitted.

Mortimer A. Berlin, Topeka, Kan., for plaintiffs-appellants.

Charles N. Henson, Topeka, Kan., for defendants-appellees.

Before HILL and DOYLE, Circuit Judges, and SMITH,* District Judge.

HILL, Circuit Judge.

This class action was filed by 42 separate plaintiffs against 13 separate defendants. Seven plaintiffs' claims have been dismissed upon their own motion, and this action was dismissed against ten defendants on plaintiffs' own motion. Fuqua Industries, Inc., Career Enterprises, Inc., and L. E. Timberlake [1] remain as defendants.

Appellants seek compensatory and punitive damages, for themselves and for all members of the class so damaged in the State of Kansas, amounting to $40,000,000 plus costs. Appellants claim the defendants placed misleading advertising on radio and television and in the newspaper and promised jobs to appellants. In this manner, appellants were fraudulently induced to enter into training course contracts and enroll in vocational training schools in Topeka, Kansas. Appellants also allege that agency and partnership arrangements existed among and between the various defendants during these fraudulent activities' occurrences.

The activities of three corporations are primarily involved in this suit. Career Enterprises, Inc. (hereinafter called Career) of St. Petersburg, Florida, engaged in the business of operating and franchising a system of adult vocational training schools. It is not clear exactly what was the relationship between Career and Career Enterprises of Kansas, Inc. (hereinafter called Career of Kansas); the parties and the trial court treated them as one and assumed both were doing business in Kansas. The record does show Career of Kansas was a wholly owned subsidiary of Career. Fuqua Industries, Inc. (hereinafter called Fuqua) is a Delaware corporation with corporate offices in Atlanta, Georgia; Fuqua is a holding company and its business is investing in other corporations' stock. Fuqua employs approximately forty persons, eighteen to twenty are professional persons—lawyers, accountants and insurance and financial experts—and the remainder are secretarial and clerical persons.

On May 30, 1969, Fuqua acquired 100% of Career's stock. Career, in operation about five years prior to this date, operated and franchised schools in 38 states and the District of Columbia. Fuqua contracted with William L. Phillips, then president of Career, and Francis W. MacNeil, then secretary-treasurer of Career, for continuation of their services to Career for a five-year period following the acquisition.[2] Career continued its business, operating as a subsidiary of Fuqua, and was so operating at all times relevant to appellants' claims.

Apparently, there was a slump in the adult vocational training market and Career's operations ceased to be profitable. On December 1, 1971, Fuqua sold 100% of Career's stock to Fortune Enterprises, Inc., a corporation organized by William L. Phillips. According to testimony of Lawrence P. Klamon, senior vice president and general counsel of Fuqua, the sale was made because " . . . Career gave no promise of being very profitable in the future . . . and the best possibility for Career to remain as a viable company was to hopefully reduce its overhead [and] shrink the scope of its operations." These efforts to be taken by Career were evidently unsuccessful; on July 20, 1972, the United States District Court for the Middle

---

* Honorable Talbot Smith, Eastern District of Michigan, sitting by designation.

1. The 1970 Annual Report of Career Enterprises of Kansas, Inc. lists L. E. Timberlake as president.

2. The agreements stated: "Fuqua hereby agrees to cause Career to employ Employee as President and Chairman of the Board [as Secretary-Treasurer] of Career and Employee agrees to serve Fuqua and Career in such capacity. . . ."

District of Florida issued an order staying all proceedings against Career Enterprises, Inc., a bankrupt.

Appellants' complaint was filed on November 5, 1971. On February 11, 1972, several defendants including Fuqua filed a motion to quash and to dismiss, for more definite statement and to separately state and number. One ground asserted for quashing and dismissing was lack of jurisdiction over the persons of defendants. Testimony of Mortimer A. Berlin, appellants' attorney, Joseph F. Savage III, then assistant secretary and assistant general counsel of Fuqua, and Lawrence P. Klamon was given before the trial judge. After the dismissal of the other parties and the withdrawal of Fuqua's attorneys as counsel for Career, the motion was treated as on behalf of Fuqua only. The trial court sustained the motion to quash and dismiss. The court concluded that Fuqua did not transact business within the State of Kansas within the meaning of the Kansas Long Arm Statute, that the service of process was ineffective and that the court lacked personal jurisdiction over Fuqua.

The issue presented here is: Did Fuqua in any manner "transact business" in the State of Kansas so that it submitted to the jurisdiction of the courts ·of Kansas? For reasons set forth below, we do not believe Fuqua transacted business in Kansas, and thus, the trial court correctly determined it had no jurisdiction over Fuqua.

█ In arriving at its decision, the trial court made numerous findings of fact concerning the relationship of Fuqua and Career. The findings of the trial court are presumptively correct, Walker v. Wiar, 276 F.2d 39 (10th Cir. 1960), and a trial court's findings will not be reversed unless they are clearly erroneous. Burgert v. Tietjens, 499 F. 2d 1 (10th Cir. 1974); Federal Security Ins. Co. v. Smith, 259 F.2d 294 (10th Cir. 1958).

█ Appellants maintain this court may deal with all the given facts and

urge this court to be freer in drawing differing conclusions than is usually the case because no weighing of conflicting evidence and no evaluation of witnesses' credibility were involved here. The trial court did hear testimony of three witnesses; however, the standard of review remains the clearly erroneous one even when only documentary evidence is presented. Sta-Rite Indus. Inc. v. Johnson, 453 F.2d 1192 (10th Cir. 1971), cert. den'd, 406 U.S. 958, 92 S.Ct. 2062, 32 L.Ed.2d 344 (1972); Mid-Continent Cas. Co. v. Everett, 340 F.2d 65 (10th Cir. 1965). Reviewing the entire record, we conclude the trial court's findings of fact are supported by evidence and are not clearly erroneous.

█ A federal court, in diversity actions, may obtain personal jurisdiction over nonresidents of the state in which that district court is held by complying with the long arm statute of the state in which the district court sits. F.R.Civ.P. Rule 4(d)(7) and (e); Wilshire Oil Co. v. Riffe, 409 F.2d 1277 (10th Cir. 1969). Personal service was made upon appellee Fuqua in Fulton County, Georgia, pursuant to the Kansas Long Arm Statute, Kan.Stat. Ann. § 60–308 (Supp.1973). Section 60–308(b) provides in pertinent part:

Any person, whether or not a citizen or resident of this state, who in *person* or through an *agent or instrumentality* does any of the acts hereinafter enumerated, thereby submits said person . . . to the jurisdiction of the courts of this state as to any cause of action arising from the doing of any of said acts:

(1) The transaction of any business within this state . . . . [Emphasis added].

█ In determining the propriety of service of process under a state long arm statute, we look to state law rather than federal law. Steinway v. Majestic Amusement Co., 179 F.2d 681 (10th Cir. 1949), cert. den'd, 339 U.S. 947, 70 S.Ct. 802, 94 L.Ed. 1362 (1950). The trial court applied Kansas law and con-

cluded Fuqua itself was not transacting business in Kansas, the corporate separation was maintained between Fuqua and Career, and Career was not Fuqua's agent.

Appellants have not contended Fuqua itself "transacted business" within Kansas as defined by the Kansas Supreme Court. The trial court specifically found that Fuqua had no officers, agents or employees in Kansas at any time material to this action and that Fuqua had not engaged in any business transactions in Kansas. Thus, appellants have relied on alter ego and agency theories.

■ As previously mentioned, it has been assumed that Career was doing business in Kansas. Consequently, under this assumption, the subsidiary was subject to the jurisdiction of the Kansas courts. Appellants argue that Fuqua conducted no other business than managing its subsidiaries, *ipso facto,* the subsidiary Career's operations were Fuqua's business, and the Kansas Long Arm Statute could reach Fuqua. No Kansas case has been located which indicates Kansas' possible application of the alter ego doctrine for jurisdiction over a nonresident parent corporation when a subsidiary corporation has transacted business within the state and the parent itself has not. Kansas, however, has recognized the alter ego doctrine. Kilpatrick Bros., Inc. v. Poynter, 205 Kan. 787, 473 P.2d 33 (1970). Under this doctrine, the corporate entity is disregarded and liability fastened on an individual who uses the corporation merely as an instrumentality to conduct his own personal business. The liability must arise from fraud or injustice perpetrated on third parties dealing with the corporation. *Id.* 473 P.2d at 42. *See* Doyn Aircraft, Inc. v. Wylie, 443 F.2d 579 (10th Cir. 1971). In applying this doctrine to a situation involving an Oklahoma statute, this court summarized the general case law in the following manner:

Where a nonresident corporation is organized for the very purpose of holding and controlling the stock of a resident corporation and thus manages and directs the internal affairs of the resident corporation, courts have disregarded the corporate entity and treated it as the alter ego of the nonresident corporation for the purpose of service of process . . . . But, none of the cases we have seen go so far as to hold mere ownership and voting of a majority of the stock of a resident or domesticated corporation by a nonresident corporation sufficient to justify ignoring the corporate entity for the purpose of service of process. Steinway v. Majestic Amusement Co., *supra,* 179 F.2d at 683.

Thus a holding or parent company has a separate corporate existence and is treated separately from the subsidiary in the absence of circumstances justifying disregard of the corporate entity. 18 Am.Jur. 2d Corporations § 17 (1965). *See* Continental & Commercial Trust & Sav. Bank v. Garden City Co., 123 Kan. 659, 256 P. 983 (1927). Circumstances justify disregard of the corporate entity if separation of the two entities has not been maintained and injustice would occur to third parties if the separate entity were recognized. Garden City Co. v. Burden, 186 F.2d 651 (10th Cir. 1951).

In Flank Oil Co. v. Continental Oil Co., 277 F.Supp. 357, 363 (D.Colo.1967), Judge Doyle said:

Cases such as *Steinway* properly discount formal separations of function and subtle efforts to maintain distinct corporate entities. The effort is to ascertain from the total facts the extent of actual control exercised by the parent over the internal affairs of its subsidiary . . . .

The Kansas Court has spoken of dealing with "the realities of the situation" when considering parent-subsidiary separation.[3] Thus, from the total facts

---

3. Cities Serv. Co. v. Koeneke, 137 Kan. 7, 20 P.2d 460, 471 (1933): "This court has no

intention to intimate that a holding company cannot set on foot a corporate subsidiary to

we seek to determine if the requisite separation was maintained between Fuqua and Career.

The trial court concluded that the corporate separation was maintained. That conclusion was based on findings of fact including the following: "(1) . . . Fuqua owns one hundred percent of the stock of some eighteen corporations, which are wholly owned subsidiaries of Fuqua, and which retain their identity as separate enterprises and corporate entities. The subsidiaries are highly diversified. . . . (3) The management of each of Fuqua's subsidiary corporations operates with a high degree of autonomy and has direct responsibility for operations of the company and the achievement of goals established in conjunction with Fuqua's management. To the extent possible Fuqua has preserved the continuity of management and operations of its subsidiary corporations after acquisition of their stock. (4) The executive staff of Fuqua in Atlanta, Georgia, provides its subsidiary corporations, including Career during the time its stock was owned by Fuqua, with general financial, legal, tax and administrative services. Fuqua acts as a banker to its subsidiaries, providing financing for their corporate operations. . . . (8) During the period of time Fuqua owned the stock of Career, the management of the affairs of Career was in the hands of its corporate officers, who managed the affairs of the corporation independently of and without day-to-day supervision of the operations by Fuqua management . . . . Fuqua did not direct or supervise the daily business activities of Career in regard to relationships of the company with franchisees or operation of company-owned schools, nor did Career report to Fuqua in regard thereto." The trial court also found the corporations had had separate independent auditors; separate books and records; separate offices, officers and office staffs; separate bank accounts; separate tax returns until a tax advantage could be realized by filing consolidated returns; separate payrolls, and independent purchasing.

Appellants point to the following "facts" as indicating the separation was not maintained: (1) Fuqua's general supervision, coordination and financial control over Career as illustrated by submission of budgets for approval, contacts between the two corporations (monthly financial reports, office visits and telephone calls), Fuqua's provision of adequate capital to Career on an open account, and Fuqua's insurance department that purchased insurance for its subsidiaries; (2) Career's financial position of insolvency and Career's continued operations because of cash Fuqua provided; (3) the employment contracts of Phillips and MacNeil which required the two men to be available in an advisory capacity to Fuqua and its subsidiaries; (4) two Fuqua staff members were on Career's board of directors as of August, 1971, and three Fuqua employees were Career officers; (5) Fuqua's Employees Stock Purchase Plan which was available to employees of subsidiaries; (6) the sale of Career. Appellants claim the sale transaction was only an attempt to remove Fuqua from potential legal obligations arising from Career.

As to (1), it is inherent in the stockholder-corporation relationship that the stockholder should ask for reports, sometimes consult with corporate officers, offer advice and even object to proposals. United States v. Elgin, J. & E. Ry., 298 U.S. 492, 56 S.Ct. 841, 80 L.Ed. 1300 (1936). Concerning (2), this Court has said parent financing of the subsidiary will not make the subsidiary a mere in-

---

perform some undertaking which would be impracticable or inexpedient for the parent company to do itself. . . . But if the corporate business of the subsidiary and that of the parent company are so hazily confused that the officials themselves do not know which is which, the legal fiction of separate corporate entities evaporates . . . ." *See* Wichita Gas Co. v. Public Serv. Comm'n, 126 Kan. 220, 268 P. 111 (1928).

strumentality. Taylor v. Standard Gas & Elec. Co., 96 F.2d 693 (10th Cir. 1938), rev'd on other grounds, 306 U.S. 307, 59 S.Ct. 543, 83 L.Ed. 669 (1939). We believe (3) and (4) to be equally innocuous; identity of officers and directors has been held insufficient to allow corporate veil piercing. American Trading & Prod. Corp. v. Fischbach & Moore, Inc., 311 F.Supp. 412 (N.D.Ill.1970), and cases cited therein. The existence of an employees stock purchase plan (5) does not show lack of corporate separation; the parent corporation was thereby providing a financial benefit to electing employees of subsidiaries.[4] Finally, the sale of the unprofitable investment (Career) would seem to be entirely consistent with the corporate separation of a holding company (Fuqua) and its business investment subsidiary (Career).

■ Thus we believe no one factor indicates the alter ego doctrine should be applied here. We also are convinced the total participation of Fuqua in the affairs of Career, as determined by the trial court, does not amount to a domination of the day to day business decisions of Career and a disregard of the corporate entity of Career.[5] Although Fuqua probably had the opportunity to control Career, the exercise of, not the opportunity to exercise, control is determinative. American Trading & Prod. Corp. v. Fischbach & Moore, Inc., supra, 311 F.Supp. at 415, cit'g Brown v. Margrande Compania Naviera, S.A., 281 F. Supp. 1004 (E.D.Va.1968). Consequently, jurisdiction of Fuqua cannot be established via application of the alter ego theory.

■ The trial court specifically held Career was not the agent of Fuqua.

This conclusion can only be reversed if it is clearly erroneous. Manufacturer's Nat'l Bank v. Hartmeister, 411 F.2d 173 (10th Cir. 1969).

Appellants point to Curtis Publishing Co. v. Cassel, 302 F.2d 132 (10th Cir. 1962), where this court applied an agency theory to hold a parent company was doing business within Kansas when its wholly owned subsidiary was shown to have done business in Kansas. The rule concerning this theory's application stated by the court there is as follows:

> . . . as all corporations must necessarily act through agents, a wholly owned subsidiary *may be an agent* and when its activities as an agent are of such a character as to amount to *doing business of the parent*, the parent is subjected to the in personam jurisdiction of the state. . . . *Id.*, 302 F.2d at 137 [Emphasis added].

We believe *Curtis* is distinguishable from the case at hand; the subsidiary distributor in *Curtis* was doing Curtis' business in Kansas.

■ In our case, Career operated adult vocational training schools. Fuqua, a holding company, engaged in diversified corporate investments. There was no agreement by which Fuqua assumed the risks of Career's business ventures; rather, Fuqua acted only in keeping with its stockholder interest. One company's exercise over a second corporation of a controlling influence through stock ownership does not make the second corporation an agent of the first. 18 Am.Jur.2d Corporations § 17 (1965). Career did not engage in Fuqua's business of diversified corporate investments. Clearly, Career was conducting its own business in Kansas and

---

4. Klamon, in testifying, indicated the plan was available to employees only if the subsidiary corporation first elected to participate in the plan. That condition, however, was not specified in the explanation of the plan in the prospecti Fuqua had issued.

5. *See* Garden City Co. v. Burden, 186 F.2d 651, 653 (10th Cir. 1951), where this court citing Taylor v. Standard Gas & Elec. Co.,

96 F.2d 693 (10th Cir. 1938), rev'd on other grounds, 306 U.S. 307, 59 S.Ct. 543, 83 L. Ed. 669 (1939), stated: " . . . the fact that one corporation owns all the stock of another and thereby selects from its own directors and officers a majority or all of the directors of the other, or that a parent finances a subsidiary is, without more, not sufficient to warrant disregarding the separate legal entity and treating them as one."

was not Fuqua's agent. For these reasons, the trial court was correct in determining it had no jurisdiction over appellee Fuqua.

Affirmed.