**Wesley LUC, Plaintiff,**

v.

**KRAUSE WERK GMBH & CO.,
KF Alsfred, Germany, et
al., Defendants.**

**No. CIV.A. 99–2516–GTV.**

United States District Court,
D. Kansas.

Oct. 30, 2003.

Brendan Connor Buckley, James T. Thompson, Jennifer L. Greenstreet, Edelman & Thompson, L.L.C., Kansas City, MO, John H. Thompson, Law Offices of Mark Rudoff, Overland Park, KS, for Plaintiff.

David R. Buchanan, Garrett D. Lambert, Scott A. Hunter, Brown & James, P.C., Barbara Cusick, James C. Morrow, Morrow, Willnauer, & Klosterman, L.L.C., Andrew B. Protzman, Christopher J. Stucky, John W. Cowden, Baker, Sterchi, Cowden & Rice, L.L.C., Kansas City, MO, Todd W. Amrein, Phoenix, AZ, for Defendants.

## MEMORANDUM AND ORDER

VanBEBBER, Senior District Judge.

Plaintiff Wesley Luc brings this personal injury/product liability action against Defendants Krause Werk, GmbH & Co. ("Krause Werk"); Krause, Inc.; and Home Depot. Plaintiff claims that he was injured when he fell from a defectively manufactured ladder. Plaintiff initially sued Krause, Inc. as the manufacturer and seller of the ladder, and Home Depot as the retailer of the ladder. After Krause, Inc., filed for bankruptcy, Plaintiff amended his complaint to add claims against Krause Werk. The case has been stayed pending Krause, Inc.'s bankruptcy action.

The case is now before the court on Krause Werk's motion to dismiss for lack of personal jurisdiction (Doc. 102). The court granted the parties time to engage in discovery for the limited purpose of seeking evidence on whether this court has personal jurisdiction over Krause Werk. The motion is now ripe for review. For the following reasons, the court denies the motion.

## I. Factual Background

The following facts are taken from the Second Amended Complaint and from the affidavits and exhibits attached to the pleadings filed in connection with Krause Werk's motion to dismiss. The court has accepted allegations in Plaintiff's Second Amended Complaint as true to the extent they are uncontroverted by affidavits and exhibits. *See Wenz v. Memery Crystal*, 55 F.3d 1503, 1505 (10th Cir.1995) (citation omitted).

On or about April 13, 1998, Plaintiff purchased a Krause Multi-matic ladder at a Home Depot store in Pompano Beach, Florida. On or about May 29, 1998, while working at his home in Lenexa, Kansas, Plaintiff fell from the ladder when it collapsed. The Multi-matic ladder has hinges and a locking bolt that allow it to be manipulated into different positions. Plaintiff alleges that the locking bolt malfunctioned, causing the ladder to collapse.

Krause Werk is a limited liability company organized under the laws of Germany and its principal place of business is in Germany. Krause Werk manufactures ladders in Germany, Poland, and Hungary for sale throughout Europe. The company

does not manufacture, market, or sell its products in Kansas or anywhere else in the United States. It is not licensed to do business in Kansas and has never had an agent for service of process in Kansas. It also has never owned real estate, maintained offices/manufacturing plants/retail outlets, or had employees, agents, post office boxes, or bank accounts in Kansas.

In the mid–1980s, Krause Werk founded and incorporated a wholly-owned subsidiary, Krause, Inc., for the purpose of distributing ladders in the United States. Krause, Inc. is an Illinois corporation with its principal place of business in Roscoe, Illinois. Krause Werk provided the financial capital and original production equipment to form Krause, Inc. Krause Werk was the sole provider of start-up capital and the sole owner of Krause, Inc. corporate stock. Ed Hansen, Director of Operations of Krause, Inc., referred to Krause, Inc. in deposition as Krause Werk's "plant in the United States."

Gunther Krause is the general manager, director, and owner of Krause Werk and the president and sole director of Krause, Inc. When Krause, Inc. was in business, Gunther Krause traveled to the United States two to three times a year.

Krause Werk and Krause, Inc. maintained separate business operations, manufacturing facilities, and headquarters, and also kept separate business records, books, accounts, payrolls, and benefits systems. Krause, Inc.'s officers and employees controlled Krause, Inc.'s day-to-day operations. In 1987, Krause, Inc. was converted to a manufacturing facility and began to manufacture and sell the Krause Multi-matic ladder.

Krause Werk originally designed and patented the hinges on the Multi-matic ladder. Additionally, Krause Werk owns the copyrights for the word "Multi-matic" and the emblem on the ladder that caused Plaintiff's injuries. The same emblem and insignia adorn ladders sold by Krause Werk in Europe. Krause Werk and Krause, Inc. had a licensing agreement under which they had mutual responsibilities to share technical information about the Multi-matic ladder at issue.

In December 1997, Krause, Inc. redesigned, manufactured, and installed the Multi-matic locking bolt. Plaintiff claims that the redesigned bolt is responsible for his injuries. Krause Werk initiated the redesign effort, but did not participate in the redesign process. Ed Hansen testified that "[t]he change was initiated by our parent company in order to strengthen that component [the locking bolt]. . . . So they asked us to investigate the possibility of doing that component in steel." According to Gunther Krause, Krause Werk was informed about which components were redesigned, but did not receive the locking bolts or conduct tests on them until after Krause, Inc. installed them in the ladders. Krause Werk tested the bolts because "tests are performed regularly on materials, components or products that Krause, Inc.—that Krause Werk receives from somebody else."

## II. Standards for Judgment

■ Krause Werk moves the court to dismiss it from the case pursuant to Fed. R.Civ.P. 12(b)(2). In opposing a Rule 12(b)(2) motion, the plaintiff bears the burden of establishing personal jurisdiction over the defendant. *OMI Holdings, Inc. v. Royal Ins. Co.*, 149 F.3d 1086, 1091 (10th Cir.1998) (citation omitted). But this burden is "light." *Wenz*, 55 F.3d at 1505 (citation omitted). The plaintiff need only make a prima facie showing that jurisdiction is proper when the parties submit affidavits and other written material in support of their position. *Intercon, Inc. v. Bell Atl. Internet Solutions, Inc.*, 205 F.3d 1244, 1247 (10th Cir.2000).

In this case, the court permitted the parties to conduct discovery on the issue of whether personal jurisdiction exists. After conducting discovery, the parties submitted evidence in support of their positions. When both parties produce supporting evidence, "the plaintiff's prima facie showing is sufficient notwithstanding the contrary presentation by the moving party." *Id.* The plaintiff must offer more than conclusory allegations, however. Only the well-pleaded facts of the plaintiff's complaint are accepted as true. *Id.* (citation omitted); *Wenz*, 55 F.3d at 1505 (citations omitted).

"To obtain personal jurisdiction over a nonresident defendant in a diversity action, a plaintiff must show that jurisdiction is legitimate under the laws of the forum state *and* that the exercise of jurisdiction does not offend the due process clause of the Fourteenth Amendment." *Far West Capital, Inc. v. Towne*, 46 F.3d 1071, 1074 (10th Cir.1995) (citation omitted). To determine whether jurisdiction is legitimate under the laws of Kansas, the court looks to the Kansas long-arm statute, K.S.A. § 60–308(b). However, "[b]ecause the Kansas long-arm statute is construed liberally so as to allow jurisdiction to the full extent permitted by due process, [the court] proceed[s] directly to the constitutional issue." *Federated Rural Elec. Ins. Corp. v. Kootenai Elec. Coop.*, 17 F.3d 1302, 1305 (10th Cir.1994) (citing *Volt Delta Res., Inc. v. Devine*, 241 Kan. 775, 740 P.2d 1089, 1092 (1987)).

The due process clause permits the exercise of jurisdiction over a nonresident defendant "so long as there exist 'minimum contacts' between the defendant and the forum State." *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980) (quoting *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). The "minimum contacts" stan-

dard may be established by either specific jurisdiction or general jurisdiction. In *OMI Holdings, Inc.*, the Tenth Circuit explained the requirements for establishing specific jurisdiction as follows:

> Our specific jurisdiction inquiry is twofold. First, we must determine whether the defendant has such minimum contacts with the forum state "that he should reasonably anticipate being haled into court there." *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559. Within this inquiry we must determine whether the defendant purposefully directed its activities at residents of the forum, *Burger King Corp. [v. Rudzewicz]*, 471 U.S. [462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985) ], and whether the plaintiff's claim arises out of or results from "actions by the defendant *himself* that create a substantial connection with the forum state." *Asahi Metal Industry Co. v. Superior Court of California*, 480 U.S. 102, 109, 107 S.Ct. 1026, 94 L.Ed.2d 92 (1987) (internal quotations omitted) (emphasis in the original). Second if the defendant's actions create sufficient minimum contacts, we must then consider whether the exercise of personal jurisdiction over the defendant offends "traditional notions of fair play and substantial justice." *Id.* at 113, 107 S.Ct. 1026. This latter inquiry requires a determination of whether a district court's exercise of personal jurisdiction over a defendant with minimum contacts is "reasonable" in light of the circumstances surrounding the case. *See id.*

149 F.3d at 1091.

A court may maintain general jurisdiction over a defendant based on the defendant's general business contacts with the state. *Id.* (citing *Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 415, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). General jurisdiction exists when the defen-

dant's contacts with the forum state are so systematic and continuous that the court may exercise jurisdiction over the defendant even though the claims at issue are unrelated to the defendant's contacts with the state. *Id.* (citation omitted).

### III. Discussion

Plaintiff does not specify whether he claims that the court has specific or general jurisdiction over Krause Werk. For purposes of this Memorandum and Order, the particular type of jurisdiction is immaterial. The thrust of Plaintiff's argument is that the court has jurisdiction over Krause Werk because Krause, Inc., was its alter ego. The parties appear to assume that Krause, Inc. had sufficient minimum contacts with the State of Kansas such that jurisdiction over Krause, Inc., does not "offend traditional notions of fair play and substantial justice." *Asahi Metal Indus. Co.,* 480 U.S. at 109, 107 S.Ct. 1026. The court assumes without deciding that it has personal jurisdiction over Krause, Inc., and determines that Plaintiff has satisfied his burden of presenting evidence that Krause Werk is Krause, Inc.'s alter ego. Based on the evidence and allegations before the court, jurisdiction is proper over Krause Werk.

### A. Choice of Law

■■■ "The jurisdiction of a district court over a nonresident defendant in a suit based on diversity of citizenship is determined by the law of the forum state." *Federated Rural Elec. Ins. Corp.,* 17 F.3d at 1304 (citing Fed.R.Civ.P. 4(e)). Under this rule of law, Kansas law applies to the dispute presently before the court. Plaintiff argues that the key issue in this case is whether the "alter ego" doctrine applies, and that the relevant law is that of the state of incorporation. According to Plaintiff, Illinois law applies. Plaintiff's rationale ignores another basic choice of law rule: When sitting in a diversity case, the court applies the choice of law rules of the state in which the court sits. *Klaxon Co. v. Stentor Elec. Mfg. Co.,* 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941). In Kansas, "the law of the state where the tort occurred—*lex loci delicti*—should apply." *Ling v. Jan's Liquors,* 237 Kan. 629, 703 P.2d 731, 735 (1985) (citation omitted). Plaintiff's claims are tort claims.

■■■ A federal district court in the District of New Mexico considered a similar situation to the one at hand and determined that the forum state's law was the appropriate law to apply. The court explained its decision as follows:

> If the state law of the forum dictates characterizing a given subsidiary corporation as a distinct legal entity, then due process is violated if a court, solely by virtue of the subsidiary's presence, exercises *in personam* jurisdiction over the parent corporation notwithstanding.
>
> .        .        .        .        .
>
> Before the parent company can be haled into an out-of-state court solely by virtue of the acts of its subsidiary, due process requires that the plaintiff must make at least a *prima facie* showing that application of the forum state's rules of corporate law would result in piercing the corporate veil or imposing liability through agency principles.

*Jemez Agency, Inc. v. CIGNA Corp.,* 866 F.Supp. 1340, 1348–49 (D.N.M.1994). The court agrees with this reasoning and determines that Plaintiff must make a prima facie showing that application of Kansas law would result in "piercing the corporate veil or imposing liability through agency principles." *Id.*

### B. Personal Jurisdiction

■■■ Kansas courts have recognized that one corporation may be the alter ego of another. *Dean Operations, Inc. v. One*

*Seventy Assocs.*, 257 Kan. 676, 896 P.2d 1012, 1016 (1995). "Under [the alter ego] doctrine, the corporate entity is disregarded and liability fastened on an individual who uses the corporation merely as an instrumentality to conduct his own personal business. The liability must arise from fraud or injustice perpetrated on third parties dealing with the corporation." *Quarles v. Fuqua Indus., Inc.*, 504 F.2d 1358, 1362 (10th Cir.1974) (citations omitted). "Circumstances justify disregard of the corporate entity if separation of the two entities has not been maintained and injustice would occur to third parties if the separate entity were recognized." *Id.* Thus, "[w]here a nonresident corporation is organized for the very purpose of holding and controlling the stock of a resident corporation and thus manages and directs the internal affairs of the resident corporation, courts have disregarded the corporate entity and treated it as the alter ego of the nonresident corporation for the purpose of service of process...." *Id.* (quoting *Steinway v. Majestic Amusement Co.*, 179 F.2d 681, 683 (10th Cir.1949)). Ultimately, courts will disregard the fiction of a separate legal entity "when there is such domination of finances, policy, and practices that the controlled corporation has no separate mind, will, or existence of its own and is but a business conduit for its principal." *Dean Operations, Inc.*, 896 P.2d at 1016.

The court considers the following ten factors when evaluating whether to disregard a corporate entity:

(1) whether the parent corporation owns all or a majority of the capital stock of the subsidiary;

(2) whether the corporations have common directors or officers;

(3) whether the parent finances the subsidiary;

(4) whether the parent corporation subscribed to all the capital stock of the subsidiary or otherwise causes its incorporation;

(5) whether the subsidiary has grossly inadequate capital;

(6) whether the parent corporation pays the salaries or expenses or losses of the subsidiary;

(7) whether the subsidiary has substantially no business except with the parent corporation, or no assets except those conveyed to it by the parent corporation;

(8) whether in the papers of the parent corporation, and in the statements of its officers, the subsidiary is referred to as such or as a department or division;

(9) whether the directors or executives of the subsidiary do not act independently in the interest of the subsidiary but take direction from the parent corporation; and

(10) whether the formal legal requirements of the subsidiary as a separate and independent corporation are not observed.

*Id.* at 1017 (citing *Schmid v. Roehm GmbH*, 544 F.Supp. 272, 275 (D.Kan. 1982)). The Kansas Supreme Court has noted that "no single factor or combination of factors is necessarily conclusive in determining whether to apply the alter ego doctrine." *Doughty v. CSX Transp., Inc.*, 258 Kan. 493, 905 P.2d 106, 114 (1995) (citation omitted).

The court determines that Plaintiff has presented a prima facie case that Krause, Inc. is the alter ego of Krause Werk and that jurisdiction is proper over Krause Werk. Plaintiff has presented evidence that Krause Werk founded and incorporated Krause, Inc. as a subsidiary. The record indicates that the corporations maintained separate business operations, manufacturing facilities, and headquarters, and also kept separate business records,

books, accounts, payrolls, and benefits systems. However, in the instant case, Plaintiff has presented additional evidence linking the two corporations.

Plaintiff also has presented evidence that Krause Werk provided the start-up capital and original production equipment for Krause, Inc. Krause Werk was the sole provider of start-up capital and the sole owner of Krause, Inc. corporate stock. Ed Hansen, Director of Operations of Krause, Inc., referred to Krause, Inc. in deposition as Krause Werk's "plant in the United States."

Gunther Krause is the general manager, director, and owner of Krause Werk and the president and sole director of Krause, Inc. Although Gunther Krause testified in deposition that Krause, Inc.'s day-to-day operations were controlled by Krause, Inc. officers and employees, the record contains evidence that Krause Werk initiated the change in the allegedly faulty locking bolt and tested the new bolts. Krause, Inc. kept Krause Werk informed of the design changes. The court notes that Ed Hansen also testified that Krause Werk was not involved from a design or engineering standpoint and that Krause Werk did not test the locking bolts until after they were installed in ladders, but at this stage of the litigation, the court must view the facts in the light most favorable to Plaintiff.

Krause Werk originally designed and patented the hinges on the Multi-matic ladder, and Krause Werk owns the copyrights for the word "Multi-matic" and the emblem on the ladder that caused Plaintiff's injuries. While there is evidence that the locking bolt at issue in this case no longer reflected Krause Werk's original design, the court finds it persuasive that Krause, Inc. still used Krause Werk's emblem and "Multi-matic" name.

The court also observes that Plaintiff could suffer injustice if the court holds that the two entities are separate. Plaintiff has submitted evidence that Krause Werk provided the initial funding for Krause, Inc. Plaintiff has also alleged in his Second Amended Complaint that Krause, Inc. was undercapitalized. Krause, Inc. is now insolvent, and Plaintiff could suffer injustice if not allowed to recover from Krause Werk.

Krause Werk urges the court to follow *Whelan v. Krause, Inc.*, No. 01 C 9963 (N.D. Ill. June 6, 2003) (unpublished opinion), and find jurisdiction lacking over Krause Werk. The court has reviewed *Whelan*, and declines to follow it. The court in *Whelan* had evidence before it that is not before this court. *Whelan* was based on Illinois law, and the decision primarily focused on whether Krause Werk was "doing business" in Illinois, which involves a different standard than whether Krause Werk was the alter ego of Krause, Inc. The court declines to view *Whelan* as persuasive authority.

All of these facts, taken together, support a determination that Plaintiff has met his burden of establishing a prima facie case of jurisdiction over Krause Werk. The court concludes that through its relationship with Krause, Inc., Krause Werk has sufficient minimum contacts with Kansas such that the entity should "reasonably anticipate being haled into court there," *World–Wide Volkswagen*, 444 U.S. at 297, 100 S.Ct. 559, and that jurisdiction does not offend "traditional notions of fair play and substantial justice," *Asahi Metal Indus. Co.*, 480 U.S. at 113, 107 S.Ct. 1026. The court therefore denies Krause Werk's motion to dismiss.

■ Plaintiff also suggests that Krause, Inc. may have been acting as an agent of Krause Werk. "[A]s all corporations must necessarily act through agents, a wholly owned subsidiary may be an agent and when its activities as an agent are of such a character as to amount to

doing business of the parent, the parent is subjected to the *in personam* jurisdiction of the state." *Quarles,* 504 F.2d at 1364 (citation omitted). The court need not address this argument because it determines that Plaintiff has presented a prima facie case that the entities are alter egos, rendering jurisdiction proper in this court.

IT IS, THEREFORE, BY THE COURT ORDERED that Krause Werk's motion to dismiss (Doc. 102) is denied.

Copies or notice of this order shall be transmitted to counsel of record.

**IT IS SO ORDERED.**