**Kristei R. JONES, Laura J. Jones, Gary L. Adler, Martha N. Adler, and Marjorie A. Anderson, individually and as trustee Marjorie A. Anderson Trust, Plaintiffs,**

v.

**MARQUIS PROPERTIES, LLC, a Utah limited liability company, Rick Clatfelter, and Chad Deucher, Defendants.**

**Civil Action No. 15–cv–1281–WJM–MEH**

United States District Court, D. Colorado.

Signed July 20, 2016

Erik Karl Schuessler, Dana L. Eismeier, Burns Figa & Will, P.C., Greenwood Village, CO, for Plaintiffs.

Marquis Properties, LLC, pro se.

Rick Clatfelter, Queen Creek, AZ, pro se.

## ORDER DIRECTING ENTRY OF DEFAULT JUDGMENT

William J. Martínez, United States District Judge

Plaintiffs Kristei R. Jones and Laura J. Jones ("the Joneses"), Gary L. Adler and Martha N. Adler ("the Adlers"), and Marjorie A. Anderson, in her own behalf and as trustee of the Marjorie A. Anderson Trust (together, "Anderson") (all plaintiffs collectively, "Plaintiffs") sue Marquis Properties, LLC ("Marquis"), Rick Clatfelter ("Clatfelter"), and Chad Deucher ("Deucher") (all defendants collectively, "Defendants") for breach of contract and various forms of fraud. (ECF No. 1.) Currently before the Court are two motions: Plaintiffs' Motion for Partial Summary Judgment against Marquis and Deucher (ECF No. 32) and Plaintiffs' Motion for Default Judgment against Marquis and Deucher (ECF No. 37). For the reasons stated below, the Court grants the Motion for Default Judgment and therefore denies the summary judgment motion as moot.

## I. BACKGROUND

Plaintiffs filed this action on June 16, 2015, claiming that Defendants conned them out of large sums of money. (ECF No. 1.) Defendants allegedly represented themselves to be real estate developers that would issue promissory notes to private investors, secure the notes with residential real properties (for investor safety), use the proceeds of the notes to fix and flip (or fix and rent) those properties, and then pay off the notes—usually in one year—at a favorable interest rate. (*Id.* ¶ 18.) Defendants would also enter into "joint ventures" with investors, which were essentially the same business deal just described except that the investor and Defendants would, in lieu of interest, split the profits upon resale of the property. (*Id.* ¶ 25.) Although Defendants at times may have actually attempted to use note proceeds for fix-and-flip projects (*see id.* ¶¶ 35–36), Plaintiffs allege that Defendants were mostly running a Ponzi scheme (*id.* ¶ 1).

Marquis and Deucher originally appeared in this proceeding through counsel (ECF No. 19) while Clatfelter appeared *pro se* (ECF No. 9). Marquis's and Deucher's counsel moved to withdraw a few

months later, which motion was eventually granted, effective February 3, 2016. (ECF Nos. 23, 30.) Absent counsel, Deucher w as then deemed *pro se* and Marquis (as a business entity that cannot represent itself) technically went into default. Clatfelter declared bankruptcy, thus staying proceedings in this case against him. (*See* ECF No. 32 at 13 n.4.)

Plaintiffs eventually moved for summary judgment on certain of their causes of action against Marquis and Deucher. (ECF No. 32.) Neither defendant filed any response. On May 13, 2016, Plaintiffs filed for default judgment against Marquis and Deucher. (ECF No. 37.) On June 20, 2016, this Court ordered Marquis and Deucher to show cause by July 1, 2016, why judgment should not enter against them given their failure to defend. (ECF No. 38.) The Court directed Plaintiffs to mail that order to the last known address(es) of Marquis and Deucher (*id.*), and the Court itself mailed the order to the addresses on file (ECF Nos. 39–40). Deucher and Marquis filed nothing on or before July 1, 2016, and have since filed nothing. Plaintiffs state that they have received no response in their attempts to communicate with Deucher, who is Marquis's sole member, since mid–January 2016. (ECF No. 37 at 2; ECF No. 32–13 ¶ 3.)

## II. LEGAL STANDARD

▇▇ Default must enter against a party who fails to appear or otherwise defend a lawsuit. Fed. R. Civ. P. 55(a). Pursuant to Rule 55(b)(1), default judgment must be entered by the Clerk of Court if the claim is for "a sum certain"; in all other cases, "the party must apply to the court for a default judgment." Fed. R. Civ. P. 55(b)(2). "[D]efault judgment must normally be viewed as available only when the adver-

sary process has been halted because of an essentially unresponsive party. In that instance, the diligent party must be protected lest he be faced with interminable delay and continued uncertainty as to his rights. The default judgment remedy serves as such a protection." *In re Rains*, 946 F.2d 731, 732–33 (10th Cir. 1991) (internal quotation marks and citation omitted).

▇▇ However, "a party is not entitled to a default judgment as of right; rather the entry of a default judgment is entrusted to the 'sound judicial discretion' of the court." *Greenwich Ins. Co. v. Daniel Law Firm*, 2008 WL 793606, at *2 (D. Colo. Mar. 22, 2008) (internal quotation marks omitted). Before granting a motion for default judgment, the Court must take several steps. First, the Court must ensure that it has personal jurisdiction over the defaulting defendant and subject matter jurisdiction over the action. *See Williams v. Life Sav. & Loan*, 802 F.2d 1200, 1202–03 (10th Cir. 1986). Next, the Court should consider whether the well-pleaded allegations of fact—which are admitted by the defendant upon default—support a judgment on the claims against the defaulting defendant. *See Fed. Fruit & Produce Co. v. Red Tomato, Inc.*, 2009 WL 765872, at *3 (D. Colo. Mar. 20, 2009) ("Even after entry of default, however, it remains for the court to consider whether the unchallenged facts constitute a legitimate basis for the entry of a judgment."). "In determining whether a claim for relief has been established, the well-pleaded facts of the complaint are deemed true." *Id.* (citing *Dundee Cement Co. v. Howard Pipe & Concrete Prods., Inc.*, 722 F.2d 1319, 1323 (7th Cir. 1983)).[1]

---

1. In this case, the Court will also rely upon Plaintiffs' summary judgment factual asser- tions, which stand unrefuted.

## III. ANALYSIS

### A. Subject Matter Jurisdiction

This Court has subject matter jurisdiction under 28 U.S.C. § 1331 given Plaintiffs' assertion of a cause of action under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. §§ 1961 *et seq.* (*See* ECF No. 1 ¶¶ 70–78.)

### B. Personal Jurisdiction

For jurisdictional purposes, Marquis and Deucher are Utah residents given that Deucher is Marquis's sole member, and Deucher is a Utah resident. (ECF No. 1 ¶¶ 7, 9; ECF No. 32–13 ¶ 3.) *See also Siloam Springs Hotel, L.L.C. v. Century Sur. Co.*, 781 F.3d 1233, 1237 (10th Cir. 2015) (LLC citizenship judged by the citizenship of its members). For the remainder of this order, unless otherwise noted, "Marquis" refers to Deucher and Marquis collectively.

In its answer (ECF No. 14), Marquis does not challenge personal jurisdiction, and Marquis has not challenged personal jurisdiction by motion. Marquis has therefore waived any personal jurisdiction defense, making personal jurisdiction appropriate. *See* Fed. R. Civ. P. 12(h)(1).

### C. Breach of Contract Claims

Plaintiffs' claims all originate with simple breach of contract. The Court will therefore discuss Plaintiffs' contract claims first.

#### 1. The Joneses

■ By promissory note dated March 25, 2014, the Joneses loaned $150,000 to Marquis, and Marquis agreed to repay that sum no later than April 1, 2015, with 10% interest per annum from the date of the note. (ECF No. 32–3.) The Joneses fulfilled their obligation by writing and sending (via overnight courier) a $150,000 check to Marquis. (ECF No. 32 at 5, ¶ 10.)

Marquis has since made no interest payments, nor has it repaid the principal. (ECF No. 32 at 5, ¶ 12.) The Joneses then foreclosed on real property that secured this note and obtained a $95,000 settlement from the current owner of that property. (*Id.* at 11 n.2.) The Joneses therefore claim $55,000 in principal, 10% interest since March 25, 2014, and a $100 contractual late fee. (*Id.* at 10–11.) Having reviewed this note and the facts asserted by the Joneses, the Court finds that judgment for these amounts is appropriate.

■ By two promissory notes dated July 1, 2014, the Joneses loaned $190,000 to Marquis ($95,000 per promissory note), and Marquis agreed to repay within one year. (ECF Nos. 32–5, 32–6.) These notes appear to have created the "joint venture" relationship described in Part I, above. Thus, there was no traditional interest rate, but instead an agreement to split resale profits 50/50. (*Id.*) However, these notes also contain this oddly worded clause: "[Marquis] may sell the property securing the Note at any time if deemed to be beneficial to both parties but not to exceed 12 months unless agreed upon by [both parties] in writing and a guaranteed interest rate of 12% APR is applicable." (*Id.*) The most natural reading of this language, standing alone, is that Marquis could not wait more than a year to sell the property unless the Joneses consented, at which point the note would then be deemed to have a 12% per annum interest rate (*i.e.*, in addition to guaranteeing 50% of the profits realized from the property's eventual sale). Presumably the Joneses' consent would also extend the one-year repayment deadline.

According to the Joneses, however, Clatfelter described the terms somewhat differently: "Mr. Clatfelter represented that if the house could not be sold within 12 months, the Joneses would be repaid in

full plus guaranteed interest at a rate of 12% . . . ." (ECF No. 32 at 5, ¶ 13.) This is a somewhat surprising interpretation when compared to the language at issue, but it is not an impossible reading and it makes more overall business sense. Given that this is the interpretation allegedly put forth by Clatfelter (as Marquis's agent), and given that Marquis has failed to challenge it, the Court accepts that the note guarantees 12% interest if the property in question is not sold within twelve months.

In early July 2014, the Joneses sent two $95,000 checks to Marquis via U.S. mail, as required by the notes. (ECF No. 32 at 7, ¶ 20.) Marquis has since paid nothing to the Joneses. (*Id.* ¶ 22.) The Joneses request their principal and 12% interest on both notes. (*Id.* at 17.) The Joneses allege, however, that the property related to one of the notes—the "Downey Property"— actually was sold in December 2014 (within the one year allowed). (ECF No. 1 ¶ 36.) The Joneses' contractual entitlement with respect to that note, then, should be half the profits on the sale. The Joneses have offered no evidence of what those profits should be. Thus, although the Joneses have demonstrated entitlement to their $95,000 principal on the Downey note, they have not demonstrated entitlement to additional amounts.

As for the second $95,000 note, the Joneses do not say whether the associated property—the "Grandview Property"— was sold within a year or not. They say only that it turned out to be

> not wholly owned by Defendants when the Joneses entered into [the relevant note] or thereafter. The Grandview Property was already encumbered by another deed of trust at the time the Joneses entered into the [Grandview note], such that Defendants could not have offered a First Deed of Trust/Mortgage Deed to the Joneses
> . . . .

(*Id.* ¶ 38.) Nonetheless, whether and when a property has been sold is a matter of public record. The Joneses have not offered any information to determine whether they are entitled to half the profits, or instead to 12% interest. The Court will therefore award the Joneses their $95,000 principal, but no interest.

All three of the Joneses' notes grant them their costs of collection, including attorneys' fees, if Marquis fails to pay. (ECF No. 32–3 § 9; ECF No. 32–5 § 8; ECF No. 32–6 § 8.) The Court will therefore grant the Joneses their attorneys' fees and costs, upon proper motion.

In sum, for their breach of contract claim (Count 6), the Joneses will be awarded: (a) $55,000 in principal with prejudgment interest on that amount at 10% per annum from March 25, 2014, until the date of judgment, (b) a $100 contractual late fee with no prejudgment interest, (c) an additional $190,000 (*i.e.*, $95,000 × 2) with no prejudgment interest, and (d) attorneys' fees and costs upon timely and proper motion under Federal Rule of Civil Procedure 54(d), D.C.COLO.L.Civ.R. 54.1, and D.C.COLO.L.Civ.R. 54.3.

### 2. The Adlers

By promissory note dated February 27, 2014, the Adlers loaned $50,000 to Marquis, and Marquis agreed to repay that sum no later than March 1, 2015, with 8% interest per annum from the date of the note. (ECF No. 32–8.) The Adlers fulfilled their obligation by wiring $50,000 to Marquis. (ECF No. 32 at 8, ¶ 26.)

Marquis has since made no interest payments, nor has it repaid the principal. (*Id.* ¶ 28.) The Adlers therefore claim $50,000 in principal, 8% interest since February 27, 2014, and a $100 contractual late fee. (*Id.* at 11–12.) Having reviewed this note and the facts asserted by the Adlers, the

Court finds that judgment for these amounts is appropriate.

The Adlers' note grants them their costs of collection, including attorneys' fees, if Marquis fails to pay. (ECF No. 32–8 § 9.) The Court will therefore grant the Adlers their attorneys' fees and costs, upon proper motion.

Thus, for their breach of contract claim (Count 7), the Adlers will be awarded (a) $50,000 in principal with prejudgment interest on that amount at 8% per annum from February 27, 2014, (b) a $100 contractual late fee with no prejudgment interest, and (c) attorneys' fees and costs upon timely and proper motion under Federal Rule of Civil Procedure 54(d), D.C.COLO.L.Civ.R. 54.1, and D.C.COLO. L.Civ.R. 54.3.

### 3. Anderson

■ By promissory note dated October 28, 2014, Anderson loaned $85,000 to Marquis, and Marquis agreed to repay that sum no later than October 29, 2015, with 10% interest per annum from the date of the note. (ECF No. 32–10.) Anderson fulfilled her obligation by writing and sending (via U.S. mail) an $85,000 check to Marquis. (ECF No. 32 at 9, ¶ 32.)

■ Marquis made two interest payments on this note, totaling $2,832. (*Id.* ¶ 33.) Marquis has otherwise made no interest payments, nor has it repaid the principal. (*Id.*) Anderson therefore claims $85,000 in principal, 10% interest since March 1, 2015 (the date after which she received no interest payments), and a contractual late fee of 30% interest per annum from March 1, 2015 on all overdue sums, as well as on collection costs. (*Id.* at 12–13.) This latter term comes from the following language in the note: "Upon failure of [Marquis] to make any Installment Pay-

ment when due ... the entire unpaid balance of all amounts owed including principal, interest, costs of collection (including attorneys' fees and legal expenses) ... shall bear interest at the rate of 30% per annum until paid in full." (ECF No. 32–10 § 4.) The mention of costs of collection raises the possibility that this language may have been an attempt to contract around the federal statutory postjudgment interest rate, as specified by 28 U.S.C. § 1961.[2] "[P]arties may contract to, and agree upon, a post-judgment interest at a rate other than that specified in § 1961." *Soc'y of Lloyd's v. Reinhart*, 402 F.3d 982, 1004 (10th Cir. 2005). To do so, however, the parties "must express such intent through clear, unambiguous and unequivocal language." *In re Riebesell*, 586 F.3d 782, 794 (10th Cir. 2009) (internal quotation marks omitted). The Court holds that simple mention of costs of collection does not meet the standard of clear, unambiguous, and unequivocal intent to contract out of § 1961. "Until paid in full" likewise does not meet that standard.

Having reviewed the note and the facts asserted by Anderson, the Court finds that judgment for $85,000 in principal is appropriate, as is 10% interest per annum from March 1, 2015, to the date of judgment. The Court also finds that 30% penalty interest is appropriate on the 10% interest from March 1, 2015, to the date of judgment. The 30% penalty interest is also appropriate on the $85,000 principal from October 30, 2015 (the day after the principal became due), to the date of judgment.

As is clear from the block-quoted language above, Anderson's note grants her costs of collection, including attorneys' fees, if Marquis fails to pay. (ECF No. 32–10 § 4; *see also id.* § 9.) The Court will therefore grant Anderson her attorneys'

---

**2.** Section 1961 applies even though Plaintiffs' contract causes of action are brought under state law. *See Youngs v. Am. Nutrition, Inc.,* 537 F.3d 1135, 1146 (10th Cir. 2008).

fees and costs, upon proper motion. The Court will also permit a 30% penalty interest rate on any fees and costs specific to enforcement of Anderson's note incurred from March 1, 2015, to the date of judgment.

In sum, for her breach of contract claim (Count 8), Anderson will be awarded (a) $85,000 in principal with prejudgment interest on that amount at 10% per annum from March 1, 2015 until the date of judgment, (b) 30% penalty interest on the 10% interest that otherwise accrued from March 1, 2015 to the date of judgment, (c) 30% penalty interest (in addition to the 10% interest previously mentioned) on the $85,000 principal from October 30, 2015, to the date of judgment, and (d) attorneys' fees and costs (including 30% penalty interest on any fees and costs specific to enforcement of Anderson's note incurred from March 1, 2015, to the date of judgment) upon timely and proper motion under Federal Rule of Civil Procedure 54(d), D.C.COLO.L.Civ.R. 54.1, and D.C.COLO. L.Civ.R. 54.3.

**D. Treble Damages Claims**

Plaintiffs assert various other claims against Marquis: violation of RICO (Count One); fraud (Count Two); civil theft under Colorado Revised Statute § 18–4–405 (Count Three); violation of the Colorado Organized Crime Control Act ("COCCA"), Colo. Rev. Stat. §§ 18–17–101 *et seq.* (Count Four); violation of the Colorado Consumer Protection Act ("CCPA"), Colo. Rev. Stat. §§ 6–1–101 *et seq.* (Count Five); and fraudulent inducement (Count Nine). All of these causes of action would permit Plaintiffs to recover the principal amounts they are already recovering through their contract causes of action. But the statutory claims remain relevant in these default

judgment proceedings because all of those claims contain a treble damages provision. *See* 18 U.S.C. § 1964(c) (RICO); Colo. Rev. Stat. § 6–1–113(2)(a) (CCPA); *id.* § 18–4–405 (civil theft); *id.* § 18–17–106(7) (COCCA).[3] Plaintiffs request treble damages as part of default judgment. (ECF No. 37 at 6.)

 Because liability under any of these statutes would grant treble damages, the Court will discuss only Plaintiffs' first theory, *i.e.*, a RICO violation.

> The elements of a civil RICO claim are (1) investment in, control of, or conduct of (2) an enterprise (3) through a pattern (4) of racketeering activity. "Racketeering activity" is defined in 18 U.S.C. § 1961(1)(B) as any "act which is indictable" under federal law and specifically includes mail fraud, wire fraud and racketeering. ... A person does not have to be formally convicted of any predicate act before [civil RICO] liability ... may attach.

*Tal v. Hogan*, 453 F.3d 1244, 1261–62 (10th Cir. 2006) (citations, footnote, and certain internal quotation marks omitted; certain alterations incorporated).

There is no reasonable dispute regarding the first and second RICO elements. Deucher and Clatfelter certainly invested in, had control of, and conducted the affairs of Marquis itself, which was an "enterprise" for RICO purposes. *See* 18 U.S.C. § 1961(4) ("'enterprise' includes any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity").

 As for the fourth element, Plaintiffs rely on federal mail and wire fraud to support their claim of racketeer-

---

**3.** All of the statutes also award attorneys' fees and costs. The Court need not address that question given its conclusion that Plaintiffs

are entitled to their fees and costs through their respective promissory notes.

ing activity. (ECF No. ¶ 71.) The elements of mail and wire fraud are closely related: "a mail or wire fraud indictment must allege a scheme to defraud, an intent to defraud, and use of mail or wire." *United States v. Welch*, 327 F.3d 1081, 1104 (10th Cir. 2003). Plaintiffs' evidence supports these elements. Use of mail and wire is indisputable, as this is the means that Marquis obtained money from Plaintiffs. (*See* Part III.C, *supra.*) As for a scheme and intent to defraud, the fact that all Plaintiffs suffered the same fate is evidence of a scheme, which is in turn evidence of intent. In addition, Plaintiffs have submitted the declaration of Scott R. Frost, a senior accountant with the Securities and Exchange Commission charged with investigating Marquis. (ECF No. 32–13 ¶¶ 1–2.)[4] After examining Marquis's bank records, Frost concluded that

> [m]ore than 95% of the deposits [were] from investors; 75% of all payments out of the accounts [were] to investors. The remaining 25% of payments out of the accounts were for Marquis/Deucher expenses. There are few, if any, payments from the accounts that could have been for the purchase of real estate.

(*Id.* ¶ 8.) This practice existed at least from December 1, 2013, through June 30, 2015 (*id.* ¶ 11), which is the time period in which Plaintiffs invested. In other words, at least at all times relevant to this lawsuit, Marquis operated as a classic Ponzi scheme. (*Id.* ¶ 14.) Thus, all elements of mail and wire fraud are present.

■ The final element of a civil RICO claim to consider is whether a *pattern* of racketeering activity existed. In this case, Plaintiffs' combined experiences and the Frost declaration support the existence of a pattern. In addition, Plaintiffs have discovered (apparently through public record searches) that Marquis has defrauded investors in Indiana through essentially the same scheme. (ECF No. 1 ¶¶ 68–69.) Plaintiffs have accordingly submitted sufficient evidence of a pattern, and therefore of all elements of a civil RICO claim. In that light, Plaintiffs "shall recover threefold the[ir] damages." 18 U.S.C. § 1964(c). Plaintiffs calculate their treble damages based solely on lost principal. (ECF No. 37 at 6.) The Court's order directing entry of judgment, below, will reflect that calculation.

### E. Veil–Piercing

■ Plaintiffs ask that this Court hold Deucher jointly and severally liable for any judgment against Marquis, claiming that Marquis was Deucher's alter ego and that Marquis's corporate veil is therefore appropriately pierced. Before the Court can evaluate whether Plaintiffs have established their veil-piercing case, however, the Court must decide which state's veil-piercing law to apply. In making that decision, the Court must apply Colorado's choice-of-law rules. *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496, 61 S.Ct. 1020, 85 L.Ed. 1477 (1941) (district courts sitting in diversity must apply choice-of-law principles of the state in which the court sits).

■ The Court could not locate a Colorado state court decision establishing the choice-of-law rules applicable to veil-piercing claims generally or alter ego claims specifically. However, "Colorado courts generally follow the choice of law principles set forth in the Restatement (Second) of Conflicts of Laws." *Echostar*

---

4. It is not clear whether Plaintiffs have Frost's permission to rely on his declaration, which is actually a copy of the declaration he submitted in support of an SEC civil enforcement proceeding in the District of Utah, case number 2:16–cv–00040–JNP. However, in light of Marquis's abandonment of this case, the Court will not inquire further whether it is proper for Plaintiffs to rely on the Frost declaration.

*Satellite Corp. v. Ultraview Satellite, Inc.*, 2009 WL 1011204, at *7 (D. Colo. Apr. 15, 2009) (citing *Wood Bros. Homes v. Walker Adjustment Bureau*, 198 Colo. 444, 601 P.2d 1369, 1372 (Colo.1979)). Moreover, in *Ficor, Inc. v. McHugh*, 639 P.2d 385 (Colo. 1982), the Colorado Supreme Court applied the Restatement (Second) of Conflict of Laws § 309 (1971) ("Restatement") to determine which law governs a related issue, namely, the rights of corporate creditors vis-à-vis corporate officers and directors. *See id.* at 391. The Court accordingly predicts that Colorado courts would likewise adopt the Restatement approach to veil-piercing/alter ego claims, which is as follows: "The local law of the state of incorporation will be applied to determine the existence and extent of a shareholder's liability to the corporation for assessments or contributions and to its creditors for corporate debts." Restatement § 307; *accord Echostar*, 2009 WL 1011204, at *7 (holding that Colorado would follow Restatement § 307 to resolve conflicts of law over veil-piercing).[5]

 Marquis is a Utah LLC. (ECF No. 1 ¶ 7.) Utah courts apply traditional corporate veil-piercing principles to LLCs. *See, e.g., Lodges at Bear Hollow Condo. Homeowners Ass'n, Inc. v. Bear Hollow Restoration, LLC*, 344 P.3d 145, 150 (Utah Ct. App. 2015). The basic veil-piercing analysis requires two steps:

> The first part of the test, often called the formalities requirement, requires the movant to show such unity of inter-

est and ownership that the separate personalities of the corporation and the individual no longer exist. The second part of the test, often called the fairness requirement, requires the movant to show that observance of the corporate form would sanction a fraud, promote injustice, or condone an inequitable result.

*Id.* (citations and internal quotation marks omitted).

Both parts of this test are satisfied on this record. The Frost declaration establishes that Deucher used Marquis to create the illusion of profitable investments and thereby to enrich himself, with no ability or intent to honor Marquis's obligations. Given this, strictly respecting Marquis's corporate form would sanction Deucher's fraud. The Court therefore finds that veil-piercing is appropriate to hold Deucher jointly and severally liable for the amounts owed by Marquis to Plaintiffs.

## IV. CONCLUSION

For the reasons set forth above, the Court ORDERS as follows:

1. Plaintiffs' Motion for Partial Summary Judgment (ECF No. 32) is DENIED AS MOOT;

2. Plaintiffs' Motion for Default Judgment (ECF No. 37) is GRANTED;

3. The Clerk shall enter default judgment in favor of Plaintiffs Kristei R. Jones and Laura J. Jones and against Marquis Properties, LLC

---

5. This result is consistent with the internal affairs doctrine, "a conflict of laws principle which recognizes that only one State should have the authority to regulate a corporation's internal affairs—matters peculiar to the relationships among or between the corporation and its current officers, directors, and shareholders—because otherwise a corporation could be faced with conflicting demands." *Edgar v. MITE Corp.*, 457 U.S. 624, 645, 102 S.Ct. 2629, 73 L.Ed.2d 269 (1982). Nonethe-

less, not all states accept the internal affairs doctrine. *See, e.g., Luc v. Krause Werk GMBH & Co.*, 289 F.Supp.2d 1282, 1288 (D. Kan. 2003) (holding that Kansas courts would judge veil-piercing under Kansas's local veil-piercing standards); *Medina v. Four Winds Int'l Corp.*, 111 F.Supp.2d 1164, 1168 (D. Wyo. 2000) (holding that Wyoming courts would judge alter ego claims, when asserted in a personal jurisdiction analysis, under Wyoming's local veil-piercing standards).

and Chad Deucher, jointly and severally, for the following amounts:

a. $55,000, with prejudgment interest on that amount at 10% per annum from March 25, 2014, until the date of judgment,

b. $190,100, with no prejudgment interest,

c. $490,000, with no prejudgment interest, as RICO penalty damages, and

d. postjudgment interest on all of the foregoing amounts at the federal statutory rate from the date of judgment until paid;

4. The Clerk shall enter default judgment in favor of Plaintiffs Gary L. Adler and Martha N. Adler and against Marquis Properties, LLC and Chad Deucher, jointly and severally, for the following amounts:

a. $50,000, with prejudgment interest on that amount at 8% per annum from February 27, 2014, until the date of judgment,

b. $100, with no prejudgment interest,

c. $100,000, with no prejudgment interest, as RICO penalty damages, and

d. postjudgment interest on all of the foregoing amounts at the federal statutory rate from the date of judgment until paid;

5. The Clerk shall enter default judgment in favor of Plaintiff Marjorie A. Anderson, in her own behalf and as trustee of the Marjorie A. Anderson Trust, and against Marquis Properties, LLC and Chad Deucher, jointly and severally, for the following amounts:

a. $85,000, with prejudgment interest on that amount at 10% per annum from March 1, 2015, until the date of judgment,

b. 30% penalty interest (in addition to the 10% interest previously mentioned) on the foregoing $85,000 award, from October 30, 2015, to the date of judgment,

c. 30% penalty interest on the 10% interest that accrued on the foregoing $85,000 award from March 1, 2015, to the date of judgment,

d. $170,000, with no prejudgment interest, as RICO penalty damages, and

e. postjudgment interest on all of the foregoing amounts at the federal statutory rate from the date of judgment until paid;

6. All Plaintiffs may recover their reasonable attorneys' fees and costs upon timely and proper motion under Federal Rule of Civil Procedure 54(d), D.C.COLO.L.Civ.R. 54.1, and D.C.COLO.L.Civ.R. 54.3; and Plaintiff Marjorie A. Anderson, in her own behalf and as trustee of the Marjorie A. Anderson Trust, may request 30% penalty interest on any fees and costs specific to enforcement of her promissory note incurred from March 1, 2015, to the date of judgment; and

7. Pursuant to D.C.COLO.L.Civ.R. 41.2, the Clerk shall ADMINISTRATIVELY CLOSE this case, subject to a motion to reopen for good cause, such as upon any development in Defendant Rick Clatfelter's bankruptcy case that would permit Plaintiffs to continue the instant proceedings against him.